ROBERT MICHAEL WILLIAMS, Plaintiff-Appellee, v. NORTHWESTERN UNIVERSITY *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 87—0945, 87—1304 cons.

Opinion filed April 28, 1988.

Robert A. Downing and Alan F. Curley, both of Sidley & Austin, and Martha P. Mandel, of Northwestern University, both of Chicago, for appellants.

Peter V. Baugher, of Adams, Fox, Adelstein & Rosen, and Daniel Karlin, both of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Dr. Robert M. Williams, brought an action in the circuit court of Cook County for monetary damages and injunctive relief against defendants, Northwestern University (hereinafter Northwestern), Dr. Roy Patterson (chairman of Northwestern's department of

medicine), and Dr. Nathaniel I. Berlin (chief of Northwestern's medical oncology section). In his third amended complaint, plaintiff alleged that defendants were forcing him to resign as a tenured professor at the medical school by interfering with his position in violation of his tenure and employment contract with Northwestern. On March 4, 1987, after hearing, the trial court granted plaintiff's motion for preliminary injunction thereby enjoining defendants from evicting plaintiff from the cancer center laboratory facilities where he conducted his research and from otherwise interfering with his research. In a second order, entered March 19, 1987, the trial court denied defendants' amended motion for injunction bond. Defendants bring this, their second, interlocutory appeal from these two orders, pursuant to Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)).

We reverse.

The record reveals that plaintiff filed a two-count complaint in the law division of the circuit court on September 2, 1982. Count I sought specific performance of an employment contract and count II sought damages for breach of that contract. On March 8, 1983, the trial court dismissed count II with leave to amend and transferred count I to the chancery division. The chancery division struck count I as insufficient to sustain a claim for relief but granted plaintiff leave to amend.

On July 26, 1983, plaintiff filed his first amended complaint seeking equitable relief and amended it, on September 13, 1985, to include a second count seeking damages. In his second amended complaint, plaintiff alleged that he is a tenured professor at Northwestern's medical school and that his duties require clinical practice, cancer research, and teaching. Plaintiff also alleged that defendants prevented him from furthering his research and clinical practice and attempted to force him to resign from his tenured position by (1) not assigning him any new patients or research assistants, (2) removing him from the rotation hospital calendars, (3) making his salary dependent on patient-generated income, (4) deleting his name from various of Northwestern's publications, and (5) discontinuing some of his fringe benefits pending the renewal of certain grants to Northwestern.

The record shows that defendants moved to dismiss the second amended complaint. While that motion was pending, plaintiff moved for a preliminary injunction to prevent defendants from reallocating his cancer center laboratory space. At that time plaintiff occupied 440 square feet of laboratory space in the Health Sciences Building (hereinafter the cancer center) and 400 square feet of laboratory space in the department of medicine (hereinafter the Morton Building). The

Morton building space is not at issue here. The trial court granted a temporary restraining order on December 20, 1985. Thereafter, on March 20, 1986, the trial court denied defendants' motion to dismiss and reentered the temporary restraining order.

Defendants appealed entry of the temporary restraining order, contending that the denial of their motion to dismiss was improper and that the trial court erred, as a matter of law, in determining that plaintiff had a reasonable probability of succeeding on the merits. This court acknowledged that tenure is a contractual interest and, as such, a protectable property interest. We reversed the temporary restraining order, however, because plaintiff did not even remotely allege in his complaint "that the tenure agreement entitled him to the privileges of which defendants allegedly deprived him." (*Williams v. Northwestern University* (1986), 147 Ill. App. 3d 374, 379.) Further, we remanded the cause to the trial court with directions that it should dismiss the second amended complaint for failure to state a cause of action and to grant plaintiff leave to amend.

On September 19, 1986, plaintiff filed a third amended complaint alleging an employment and tenure contract, oral in part and written in part, and reentered his motion for preliminary injunction. The court granted the preliminary injunction after finding that plaintiff had a partly written and partly oral contract requiring Northwestern to provide plaintiff with "adequate laboratory facilities and equipment" in which to continue and expand his research. Thus, the trial court enjoined Northwestern from evicting plaintiff from the sterile laboratory space in the cancer center. Defendants moved for an injunction bond. The trial court denied that motion on March 19, 1987. Defendants bring this interlocutory appeal from these two orders.

■ Defendants contend that the trial court erred in entering the preliminary injunction and that this court should reverse that order. "The granting or denial of a preliminary injunction is addressed to the sound discretion of the trial court and, absent an abuse of that discretion, its decision will not be disturbed by a reviewing court." (*Pullem v. Evanston YMCA* (1984), 124 Ill. App. 3d 264, 267, citing *People ex rel. Fahner v. Community Hospital* (1982), 108 Ill. App. 3d 1051.) Furthermore, great caution is exercised and great necessity required for the issuance of mandatory injunctive relief, such as that sought here. *Pullem*, 124 Ill. App. 3d at 267.

■ It is well established that for a preliminary injunction to issue the party seeking it must establish by a preponderance of the evidence that it is entitled to such remedy by showing (1) he has a clearly ascertained right which must be protected; (2) he will be irrep-

arably injured in the absence of that protection; (3) he has no adequate remedy at law; and (4) he is likely to be successful on the merits. *Pullem*, 124 Ill. App. 3d at 267; *Rotary Club v. Harry F. Shea & Co.* (1983), 120 Ill. App. 3d 988, 995.

■ The trial court found that plaintiff has a protectable contract interest stemming from an employment and tenure agreement, which was partially oral and partially written, between himself and defendant Northwestern (acting principally through defendants Patterson and Berlin). The court went on to find that this agreement was embodied and reflected in a number of letters and documents. More specifically, the court refers to (1) the February 1, 1979, letter from Dr. Patterson to plaintiff; (2) the March 21, 1979, letter from Dr. Patterson to Northwestern Medical School Dean James E. Eckenhoff; and (3) Northwestern's 1984 National Institutes of Health (hereinafter NIH) grant application.

The February 1, 1979, letter primarily expresses the intention of Drs. Patterson and Berlin to nominate plaintiff for the position of "Chief of the Section of Medical Oncology" of the department of medicine. The only reference to laboratory space is found in the second paragraph and states that, "[t]he laboratory and office space in the Health Sciences Building [the cancer center] is estimated at 2,000 net square feet. In addition, you will retain the 400 square feet of Department of Medicine [the Morton Building] space."

Whereas this letter does infer that the parties had reached an agreement to the use of Morton Building space, the space plaintiff occupies in the Morton Building is not at issue here and the significance of such an inference will not be addressed. Additionally, while this language is indicative of a prior conversation concerning laboratory space availability, it does not infer that the parties had agreed to the plaintiff's use of cancer center space.

The focus of the March 21, 1979, letter from Dr. Patterson to the dean of the medical school at Northwestern was to nominate plaintiff for the rank of professor of medicine and to recommend his appointment as chief of the section of medical oncology. It makes no mention of laboratory space in either the cancer center or the Morton Building. Thus, it is not reflective of an agreement to grant plaintiff specific laboratory space.

The NIH grant application specifies some of the terms of a contract entered into between Northwestern and NIH. Although it lists the laboratory space in both the cancer center and the Morton Building occupied by plaintiff, such does not reflect an agreement between Northwestern and plaintiff for his continued use of that space. The ef-

fect, if any, that the reallocation of plaintiff's cancer center space will have on the contract between Northwestern and NIH is not relevant to the instant case.

We find that these writings, taken with the record before us, do not reflect or embody a contract which grants plaintiff the continued use of the specific laboratory space at issue here. Thus, plaintiff has failed to establish that he has a clearly ascertained right to the continued use of the cancer center laboratory space he now occupies. Accordingly, we need not consider whether plaintiff has met the other criteria for the issuance of the preliminary injunction.

Defendants next contend that the trial court abused its discretion by denying their motion for injunction bond which was filed pursuant to section 11—103 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 11—103). This section empowers the trial court to require a recipient of injunctive relief to post bond in an amount adequate to protect the opposing party in the event the injunction was wrongfully entered. However, having reversed on the first issue, we need not address this contention.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

LINN and McMORROW, JJ., concur.