THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PHILLIP A. FLANAGAN, Defendant-Appellant.

Fourth District   No. 4—84—0787

Opinion filed May 16, 1985.—Rehearing denied June 13, 1985.

Daniel D. Yuhas and Deborah L. Rose, both of State Appellate Defender's Office, of Springfield, for appellant.

G. Patrick Riley, State's Attorney, of Eureka (Robert J. Biderman, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant was charged by information, filed April 9, 1984, in the circuit court of Woodford County, with the offenses of criminal trespass to land and resisting a peace officer. (Ill. Rev. Stat. 1983, ch. 38, pars. 21—3, 31—1.) Following a bench trial on August 15, 1984, defendant was found guilty of each offense, sentenced to a one-year term of court supervision, and ordered to pay restitution for expenses incurred by the two police officers involved in the arrest which defendant resisted.

On appeal defendant raises two issues for our consideration: (1) whether defendant could properly be convicted of criminal trespass to land upon which he resided with the permission of the owner; and (2) whether the trial court erred in ordering restitution for expenses incurred by one officer whom defendant was not expressly charged with resisting.

The incident giving rise to the convictions in this case occurred on April 4, 1984, at the home of defendant's mother in Eureka. Defendant had recently moved back into the house occupied by his mother where he had resided periodically during his adult life; defendant was 25 years old at the time of the incident.

The testimony of defendant and his mother, Mary Ann Flanagan, indicated that on the evening of April 4, 1984, an argument developed between the two over money. Defendant called the Eureka city police department requesting an officer come to the residence in order to assist in resolving the dispute. Eureka city police officer C. W. Lenover responded to the call and shortly thereafter chief of police Gerald Reinman was also summoned to the home.

At the bench trial, the testimony of Chief Reinman and Officer Lenover as to what then transpired differed sharply from the version of events according to defendant and his mother. The police officers stated that Mrs. Flanagan repeatedly requested her son to leave the house and demanded his house key. Defendant eventually left the house voluntarily but refused the repeated requests of the officers to surrender his house key. Instead, according to the officers, defendant began walking to his car, at which point Chief Reinman seized defendant by his arm. A scuffle ensued during which defendant was subdued and placed in handcuffs; Officer Lenover sustained minor injuries during the melee and clothing worn by Chief Reinman was damaged.

In contrast, Mrs. Flanagan testified that she never wanted her son removed from the house. She recalled that she may have stated that she wanted her son out of the house, but indicated she meant only that she desired him to be self-sufficient and out on his own. She denied ever requesting defendant to surrender his house key but stated that one of the officers initiated the request.

Defendant's account of the events which occurred inside the house basically coincided with his mother's. He stated that he eventually left the house in order to placate the officers and defuse the situation. He admitted that he refused to surrender his house key but essentially denied offering any resistance to the officers, who purportedly never informed him that he was under arrest.

Defendant was found guilty of criminal trespass to land under section 21—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 21—3(a)), which provides:

> "Whoever enters upon the land or any part thereof of another, after receiving, immediately prior to such entry, notice from the owner or occupant that such entry is forbidden, or remains upon the land of another after receiving notice from the owner or occupant to depart, commits a Class C misdemeanor."

"The statute contemplates two distinct offenses: first, to enter upon the land of another despite a warning that entry is forbidden; second, to remain on the land of another after receiving notice from the owner or occupant to leave." (*People v. Ulatowski* (1977), 54 Ill. App. 3d 893, 896, 368 N.E.2d 174, 176.) The facts of the instant case arguably fall within the second type of criminal trespass, as charged in the information, and we would ordinarily be inclined to affirm the judgment of the trial court as fact finder on the basis of the evidence contained in the record.

However, defendant argues that as an occupant of the Flanagan home, living there with the permission of the owner, his mother, he

was exempt from the proscriptions of the criminal trespass statute by operation of section 21—3(c). That subsection provides:

"This Section does not apply to any person, whether a migrant worker or otherwise, living on the land with permission of the owner or of his agent having apparent authority to hire workers on such land and assign them living quarters or a place of accommodations for living thereon, nor to anyone living on such land at the request of, or by occupancy, leasing or other agreement or arrangement with the owner or his agent, nor to anyone invited by such migrant worker or other person so living on such land to visit him at the place he is so living upon the land." Ill. Rev. Stat. 1983, ch. 38, par. 21—3(c).

The State argues that this subsection was intended to apply only to migrant workers and their guests, and not to a "house guest" who has overstayed his welcome. However, a plain reading of subsection (c) establishes that the prohibitory provisions of the criminal trespass statute do not apply to *"any person,* whether a migrant worker *or otherwise,* living on the land with permission of the owner." (Emphasis added.)

■ It is a cardinal rule of statutory interpretation that a statute should be construed, if possible, so that no word, clause or sentence is rendered meaningless or superfluous. (*People ex rel. Barrett v. Barrett* (1964), 31 Ill. 2d 360, 201 N.E.2d 849.) Were we to accept the State's proposed construction of subsection (c), we would be required to arbitrarily delete the words "any person" and "or otherwise" from the subsection. Further, a criminal statute must be strictly construed in favor of the accused, and nothing is to be taken by intendment or implication against him beyond the obvious or literal meaning of such statutes. (*People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171.) We therefore decline to adopt the State's proposed construction and amend the subsection by judicial fiat.

It was undisputed at defendant's trial that he was living at the Flanagan residence with his mother's permission, and was not a mere "house guest." Defendant had lived at the home intermittently throughout his life, and had recently moved back into the house. He was living in the basement, and there were boxes of his personal belongings around the house which he had yet to unpack. Indeed, defendant returned to the home the day after his arrest, following his release from the hospital where he was treated for injuries sustained in the scuffle with police.

Thus, whether defendant's mother wanted him off the premises and demanded his house key is irrelevant to the issue in this case.

Defendant, as a person living on the premises with the permission of the owner, was exempt from prosecution under the criminal trespass to land statute. The criminal trespass conviction must consequently be reversed.

Defendant does not attack the propriety of his conviction for resisting a peace office. He does complain, however, that he was erroneously ordered to pay restitution to Chief Reinman in the amount of $50 for the damage to the latter's clothing, since he was not specifically charged with resisting Reinman.

Section 5—5—6 of the Unified Code of Corrections permits restitution to be ordered for out-of-pocket expenses including damage to property "proximately caused by the conduct of the defendant." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—6.) Defendant cites *People v. Knowles* (1980), 92 Ill. App. 3d 537, 414 N.E.2d 1322, for the proposition that restitution may be ordered only in connection with crimes for which the defendant is specifically charged. *Knowles* is readily distinguishable on the grounds that the defendant there was charged with the crime of arson against specific property, *i.e.*, real estate, and was ordered to pay restitution for personal property damaged in the fire but for which defendant was not charged by criminal information. In the instant case, unlike *Knowles*, ownership is not an element of the crime charged, *i.e.*, resisting a peace officer.

The applicable rule states only that restitution may not be ordered for matters unrelated to the charges before the court. (*People v. Mahle* (1974), 57 Ill. 2d 279, 312 N.E.2d 267.) The financial loss sustained by Chief Reinman was a natural consequence of the defendant's criminal actions, and Reinman was named in the information. (See *People v. House* (1981), 98 Ill. App. 3d 304, 424 N.E.2d 412.) Therefore, the order of restitution was proper.

Defendant was sentenced to a period of one year's court supervision. While defendant's conviction for criminal trespass must be reversed, his conviction for resisting a peace officer as a Class A misdemeanor subjected defendant to more severe penalties than did the conviction for criminal trespass to property. Therefore, there is no need to remand this case for resentencing.

Affirmed in part and reversed in part.

McCULLOUGH and MORTHLAND, JJ., concur.