LAWRENCE A. WILLIAMS *et al.*, Plaintiffs-Appellants, v. KARL NAGEL *et al.*, d/b/a Champaign Housing Associates, d/b/a Parkside and Mansard Square Apartments, *et al.*, Defendants-Appellees.

Fourth District   No. 4—92—0949

Argued July 20, 1993.—Opinion filed September 30, 1993.—
Rehearing denied November 1, 1993.

LUND, J., specially concurring.

Malcolm Barnes (argued), of Urbana, for appellants.

Lorna K. Geiler (argued), of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., of Champaign, for appellees Karl Nagel and Steven W. Barrick.

Michael R. Cornyn (argued), of Thomas, Mamer & Haughey, of Champaign, for appellees City of Champaign, Donald Hanna, and Don Carter.

JUSTICE McCULLOUGH delivered the opinion of the court:
Plaintiffs are three individuals who have been barred from entering a housing complex (complex) known as Parkside and Mansard Square Apartments in Champaign. Defendants are the management of the apartments (management), the owner of the complex (Nagel Group), the City of Champaign (City), and two individual Champaign police officers, Donald Hanna and Don Carter. Plaintiffs' amended complaint sought damages for alleged violations of certain of their common law, statutory and constitutional rights. Defendants' motion for summary judgment was granted and plaintiffs appeal. We affirm.

Plaintiff Lawrence Williams was served with notice that he was being barred from the complex as of September 4, 1991. Plaintiff Mansion Clark was served with notice of being barred from the complex on June 10, 1989. Plaintiff Donald Merriweather was served with notice barring him from the complex as of July 29, 1991.

Plaintiffs Williams and Clark filed their original verified complaint on May 15, 1992, essentially alleging they had invitations to be in the complex and they were prevented from entering the complex, thereby violating certain of their constitutional rights, includ-

ing their right to freedom of movement, due process, liberty interest, and the freedom to speak freely and peaceably assemble. Plaintiffs also alleged they were subjected to false imprisonment. Plaintiffs' complaint was accompanied by affidavits.

On May 15, 1992, the court denied plaintiffs' request for a temporary restraining order (TRO), finding no specific facts alleged in the verified complaint and the attached affidavits caused it to clearly appear that immediate and irreparable injury would result before notice could be served and a hearing held.

On June 2, 1992, the Nagel Group filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—619). On June 3, 1992, a hearing was held on plaintiffs' petition for a preliminary injunction. The court deferred the hearing on the Nagel Group's motion to dismiss because of insufficient notice and then proceeded with the hearing on the motion for a preliminary injunction. The court heard arguments from counsel, denied the motion for the preliminary injunction, and set a hearing on the motion to dismiss for June 23, 1992.

On June 16, 1992, the Champaign police department (CPD), named as a defendant in the original complaint, filed its motion to dismiss. On June 23, 1992, plaintiffs were granted a continuance and the hearing on the motions to dismiss was vacated and continued. Plaintiffs were granted leave to file an amended complaint, which they did on July 24, 1992, naming the City instead of the CPD as a defendant.

On August 31, 1992, the Nagel Group filed a motion for summary judgment or in the alternative to dismiss the first-amended complaint. On September 1, 1992, the City and Hanna filed motions to strike, to dismiss, and for summary judgment. Defendant Carter filed his appearance on September 16, 1992, in which he adopted the City's motion for summary judgment or in the alternative to dismiss.

A hearing on the motion for summary judgment was held on October 9, 1992. The trial court granted summary judgment in favor of all defendants and dismissed the case. A written order was filed on October 30, 1992. Plaintiffs filed their notice of appeal purporting to appeal the May 15, 1992, denial of the TRO, the June 23, 1992, denial of the preliminary injunction, and the October 30, 1992, order granting summary judgment.

As to the denial of the TRO on May 15, 1992, and the denial of the preliminary injunction on June 3, 1992, we hold plaintiffs have lost their right to appeal those two orders.

■ If an order is entered which is immediately appealable under Rule 307 (134 Ill. 2d R. 307), then an appeal must be taken or the right to challenge the ruling is lost. (*Robert A. Besner & Co. v. Lit America, Inc.* (1991), 214 Ill. App. 3d 619, 626, 574 N.E.2d 703, 707.) A TRO is appealable under Supreme Court Rule 307(d) (134 Ill. 2d R. 307(d)), and an appeal must be filed within two days of the entry of the order sought to be reviewed or the right to challenge the ruling will be lost. (See *Baird & Warner, Inc. v. Gary-Wheaton Bank* (1984), 122 Ill. App. 3d 136, 138-39, 460 N.E.2d 840, 842; *Design Studio International, Inc. v. Chicago Title & Trust Co.* (1989), 185 Ill. App. 3d 797, 808, 541 N.E.2d 1166, 1173.) A preliminary injunction may be appealed under Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)) and the notice of appeal must be filed within 30 days of the entry of the order. We hold the denial of both the TRO and preliminary injunction were appealable under Supreme Court Rule 307. By failing to timely file an appeal from those orders, plaintiffs lost the right to challenge them. The notice of appeal was timely, however, as to the trial court's order granting summary judgment in favor of defendants.

A motion for summary judgment should be granted when the pleadings, depositions and affidavits reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c); *Balla v. Gambro, Inc.* (1991), 145 Ill. 2d 492, 508, 584 N.E.2d 104, 112.) The use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit, but it is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.

When the pleadings, depositions and affidavits fail to establish an element of plaintiff's cause of action, summary judgment is proper. (*Brunsfeld v. Mineola Hotel & Restaurant, Inc.* (1983), 119 Ill. App. 3d 337, 341, 456 N.E.2d 361, 365.) In determining whether the moving party is entitled to summary judgment, a court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent. *Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271-72, 586 N.E.2d 1211, 1215.

■ Plaintiffs first allege they have common law and statutory rights to be present in the complex because they were invited onto the premises by certain tenants. These rights allegedly stem from

section 21—3(c) of the Criminal Code of 1961 (Criminal Code) (Ill. Rev. Stat. 1991, ch. 38, par. 21—3(c)) and this court's decisions in *Karow v. Student Inns, Inc.* (1976), 43 Ill. App. 3d 878, 357 N.E.2d 682, and *People v. Flanagan* (1985), 133 Ill. App. 3d 1, 478 N.E.2d 666.

Section 21—3(c) of the Criminal Code provides, in pertinent part:

> "This Section does not apply to any person, whether a migrant worker or otherwise, living on the land with [the] permission of the owner or of his agent having apparent authority to hire workers on such land and assign them living quarters or a place of accommodations for living thereon, nor to anyone living on such land at the request of, or by occupancy, leasing or other agreement or arrangement with the owner or his agent, *nor to anyone invited by such migrant worker or other person so living on such land to visit him at the place he is so living upon the land.*" (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 21—3(c).)

In *Flanagan,* this court held defendant was exempt from prosecution under the criminal trespass statute because he resided at the house, his mother's, at which he was alleged to have criminally trespassed. Since the evidence established he resided there, he was exempt from prosecution under the criminal trespass statute. *Flanagan,* 133 Ill. App. 3d at 5, 478 N.E.2d at 668.

In *Karow,* plaintiff brought an action for false arrest and imprisonment against the operator of a student housing unit and the head resident. A jury verdict was returned in favor of defendants. This court held, among other things, plaintiff could not have been found guilty of criminal trespass since he was present on the property at the express request of a lawful tenant. *Karow,* 43 Ill. App. 3d at 883, 357 N.E.2d at 687.

These cases are distinguishable. In *Flanagan,* defendant was asked to leave by his mother because of a fight over money, but he could not be prosecuted for criminal trespass because he resided at that house. This case offers no support to plaintiffs because they do not reside in the complex. The plaintiff in *Karow* was asked to leave the housing unit because the operators thought he was committing an offense; however, there were no reasonable grounds for belief that he was in fact committing an offense. The difference between *Karow* and this case is, although both plaintiff there and plaintiffs here had been invited onto the property, plaintiff in *Karow* had not been barred from the premises.

Plaintiffs' presentation of evidence by tenants that they were invited onto the premises has little merit. The tenants are not plaintiffs in this proceeding. Additionally, the lease agreement with tenants provided management had the right "to bar individuals from the property."

Section 21—3(a) of the Criminal Code provides that if a person enters the land or a building of another after receiving, prior to such entry, notice from the owner or occupant that such entry is forbidden, the person entering the land is subject to criminal·trespass. (Ill. Rev. Stat. 1991, ch. 38, par. 21—3(a).) Plaintiffs have all been served with notice that if they attempt to enter the complex, they will be subject to arrest for criminal trespass. The exception found in subsection (c) regarding the provisions of subsection (a) not applying if the person attempting to enter the property has been invited by a resident of that property cannot be used to nullify the provisions of section (a). Otherwise, if every time a person was prohibited from entering certain property, residents or tenants of that property claimed they had invited that person onto the property, the exception found in subsection (c) would eliminate the offense of criminal trespass found in subsection (a).

Both parties referred at oral argument to our recent decision in *City of Quincy v. Daniels* (1993), 246 Ill. App. 3d 792. In *City of Quincy*, defendant was found guilty of trespass under section 31.138 of the Municipal Code of the City of Quincy. (Quincy, Ill., Municipal Code §31.138 (1980).) This court reversed defendant's conviction, finding that since defendant was occupying the apartment at the express invitation of the leaseholder, the only relevant question was the validity of the lease. This question must be answered by the application of the principles of landlord-tenant law and the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1991, ch. 110, par. 9—101 *et seq.*) rather than the principles of criminal law. *City of Quincy*, 246 Ill. App. 3d at 797.

We find our decision in *City of Quincy* distinguishable. First, that case involved a criminal matter involving a municipal ordinance while that presented here is a civil case involving constitutional rights. Moreover, that case involved a single unit while the dwelling in question here is a multiunit apartment complex. Finally, we note that the discussion of section 21—3(c) of the Criminal Code and the public policy of this State that criminal trespass may not be charged against invited guests on leased property is merely *dicta* incidental to that opinion and not binding on us in this decision. The holding of that case was that possessory interests in a lease-

hold cannot be determined by principles of criminal law. We note that in *City of Quincy*, defendant had in fact been issued a citation for criminal trespass. Section 21—3(c) of the Criminal Code was intended by the legislature to address the plight of migrant workers or persons similarly situated; that subsection has nothing to do with the circumstances of this case and constitutes no defense to the charge of criminal trespass to land except in the limited circumstances involving migrant workers. Section 21—3(c) of the Criminal Code does not apply to this case. The exception found in that subsection does not nullify the provisions of section 21—3(a) of the Criminal Code. To the extent *City of Quincy* is not distinguishable, its statements with respect to section 21—3(c) of the Criminal Code and the public policy of this State are not to be used as precedent.

Having determined plaintiffs have no common law or statutory right to enter the complex, the only remaining issue is whether their constitutional rights have been violated by being barred from the complex. Plaintiffs' argument can essentially be summarized as follows. Individuals are served with notice that they have been barred from the complex. On occasion, the CPD serves this notice. Some, but not all, persons who are barred are placed on a "no trespass" list. If a person on the "no trespass" list attempts to enter the complex, he or she could be arrested for criminal trespass. The CPD decides who is to be placed upon the "no trespass" list. This, plaintiffs argue, is the necessary "State action" to validate their claims of the violation of their constitutional rights.

■ For an action to rise to the level of "State action" triggering constitutional protection, there must be a sufficiently close nexus between the State and the action, so that the action may be fairly treated as that of the State. The State is "significantly involved" only when it has commanded a particular result or reserved to itself the power to determine that result. Mere acquiescence to a private action by the State does not convert it to State action. (*In re Marriage of Braundmeier* (1990), 201 Ill. App. 3d 14, 17, 558 N.E.2d 805, 806-07.) In cases where a defendant is a private party, the question is whether the conduct has sufficiently received the imprimatur of the State so as to make it "State" action for purposes of the fourteenth amendment. To determine whether certain conduct of a defendant is "State action," a complaining party may show that there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be treated as that of the State itself. The purpose of this requirement is to assure that constitutional standards are in-

volved only when it can be said that the State is responsible for the specific conduct of which the plaintiffs complain. *Blum v. Yaretsky* (1982), 457 U.S. 991, 1003-05, 73 L. Ed. 2d 534, 546-47, 102 S. Ct. 2777, 2785-86.

Plaintiffs alleged the CPD's practice of recommending who is to be placed on the "no trespass" list creates a sufficiently close nexus between the actions of the CPD and the Nagel Group such as to make the actions of the Nagel Group those of the City. Paragraph 11 of plaintiffs' complaint, which is incorporated by reference into the counts seeking injunctive relief and damages, alleges:

"That commencing around July, 1991[,] and continuing to present, the CHAMPAIGN POLICE DEPARTMENT, on information and belief, at the instigation and direction of the Defendants, DONALD HANNA and DON CARTER, instituted a custom, policy, or practice, acquiesced or approved by and jointly executed by all other Defendants, whereby the CHAMPAIGN POLICE DEPARTMENT, because intimately involved in and controlled virtually all aspects of the barring of the named plaintiffs herein and others, as an example, per exhibit 'H', attached and incorporated herein, to include but not be limited to the following chilling conduct:

A. Deciding who was to be barred and/or who was to remain being barred and adding numerous other to the list of persons barred from the premises of PARKSIDE AND MANSARD SQUARE APARTMENTS, often directing security personnel to place certain individuals on the list.

B. Actually both deciding who was to be barred and serving barring notices on behalf of the other named Defendants in numerous instances, as an example per exhibit 'I', attached hereto and incorporated herein and being a notice barring the Plaintiff, DONALD F. MERRIWEATHER served by Officers Ron Durbin and John Schweihart, officers of the CHAMPAIGN POLICE DEPARTMENT.

C. Directing or virtually directing a policy change in the security arrangements at PARKSIDE AND MANSARD SQUARE APARTMENTS from one of first asking alleged trespassers on the barred list to please leave, secondly, warning the alleged trespasser to leave and lastly, actually calling the police to arrest the alleged trespasser to one of the calling the police immediately to arrest the alleged trespasser."

Plaintiffs contend this conduct by the CPD, Hanna and Carter violated their constitutional rights under the first, fifth, and four-

teenth amendments to the United States Constitution. (U.S. Const., amends. I, V, XIV.) Plaintiffs allege the Nagel Group approved, acquiesced in, and allowed the CPD, Hanna and Carter to become so "intimately involved in the security arrangements and barring practices, such that the conduct can be described as State action."

Patricia Jeffers has three affidavits on file dated June 2, 1992, August 28, 1992, and October 6, 1992. In each, she stated she is vice-president of property management of Nagel Group, Inc. She stated officers of the CPD have served barred notices to individuals, but that the management of Parkside and Mansard Square Apartments has complete and total discretion as to whom should be placed on the "no trespass" list. The CPD has given management notice that individuals have been served with notice that they are barred, and management does consider reports and records from the CPD, the county police and Urbana police department. However, not all individuals recommended by the CPD have been placed on the "no trespass" list.

In his affidavit of October 1, 1992, Mark S. Hamilton stated in paragraph four that a policy change by the management in July 1991 occurred in which it authorized the CPD to place persons on a list barring them from entering the complex. He tape-recorded a meeting between himself, members of the CPD and the management which "jogged his memory to recall on information and belief" that the CPD had previously been supplied with a stack of blank forms from the management to prepare and use in barring individuals, with the CPD filling out the forms, serving them and providing copies to the management. Exhibit "A" attached to Hamilton's affidavit appears to be a set of regulations for security. Paragraph two contains the sentence, "A person can be BARRED by SECURITY [sic]—POLICE—PARKESIDE [sic] and MANSARD EMPLOYEES."

Hamilton stated in his affidavit of October 5, 1992, that he was the manager of E.L. Enforcement Service, Inc., of Belleville, Illinois, which provided security services to Parkside and Mansard Square Apartments between October 1990 and February 1992. To the best of his knowledge, no one was able to place an individual on the "no trespass" list except the employees of Parkside and Mansard Square Apartments. If an individual was served with a barred notice but not put on the "no trespass" list, security would not call the police to arrest the individual for criminal trespass if he was at the complex. Hamilton stated that there was a difference between being served a notice of barred and being on the "no trespass" list.

Elizabeth Nicholson stated in her affidavit of October 6, 1992, that she has been a management representative of Parkside and Mansard Square Apartments since 1989. She stated exhibit "A" to Hamilton's affidavit is a document prepared by Aaron Shriver, the site superintendent for Yale Enforcement Service, Inc., which was prepared at her request for use in a newsletter to the residents of the complex. She did not request Shriver to prepare paragraphs one through three and five through eight of Hamilton's affidavit. She stated exhibit "A" was never distributed to the residents of the complex. Exhibit "A" was never used in any newsletter to the residents of the complex.

The final two affidavits on file are those of Hanna and Carter, the individual CPD officers named in this lawsuit. Hanna stated in his affidavit that at the time relevant to the complaint he was the chief of police for the City. There was no policy, custom or practice of the police department to bar persons from entering any private property, including the premises of the Parkside and Mansard Square Apartments. If persons were barred from private property by the owners, the police department would enforce the trespass laws. Hanna stated the decision to bar people was not made by the police department or through any policy of the police department, and as chief of police he was not authorized by the Champaign city council to bar persons from private property or to make any policy by which police officers would make the decision to bar persons from private property. He neither made such a policy nor concurred or acquiesced in such a custom or policy. The policy of the police department was to enforce the law, not to make decisions for private property owners.

Carter stated in his affidavit that he was now acting chief of police for the City, and at the times relevant to the complaint, he was deputy chief of the CPD. There was no policy within the CPD to bar persons from the premises of Parkside and Mansard Square Apartments. There is a policy of the CPD to enforce the trespass laws. He stated the police department did not make the decision to place the plaintiffs on the "no trespass" list. He also stated that Merriweather has been barred from the property by order of Judge Parkinson in criminal case No. 91—CM—1513. His affidavit indicates the police department had been in meetings with citizen tenant groups and others regarding the problems of recurrent crime in the complex, as well as the means and methods which might bring a greater degree of safety and security to the residents. The management of the complex attended these meetings. However, he

stated in his affidavit that the police cannot bar persons from private property; that was a decision to be made by the property owner. The police have arrested persons for trespass if they have been barred from the property and have on occasion served the notice of being barred upon the individual. He also admitted that the police officers occasionally provide information, advice or recommendations to property owners concerning individuals who have been involved in criminal activity and this advice is sometimes taken and used by the owner to decide whom to bar, but sometimes the advice is not followed and the individual is not barred.

In conclusion, plaintiffs have presented no facts to show a sufficiently close nexus between the conduct of the CPD and the Nagel Group in barring individuals from the complex. The conduct of the Nagel Group cannot be fairly treated as that of the CPD to establish the necessary State action.

At best, the Nagel Group and the management use the CPD to serve the barred notices to certain individuals. The police department is better equipped to serve people with such notices because they are able to find people more easily and actually deliver the notice. While this in and of itself may be State action, the serving of notice is not enough to establish plaintiffs' right to bring this action. Moreover, the Nagel Group may have relied upon recommendations from the CPD as to whom to place on the "no trespass" list or whom to bar, but the Nagel Group did not always follow those recommendations.

The affidavits submitted by the CPD and the management representatives indicate that the final decision as to who was to be placed on the "no trespass" list was up to the management rather than the police department. The most contradictory evidence to that assertion is exhibit "A" to Hamilton's affidavit, which contains the sentence that the CPD had the authority to bar people. However, this was countered by the affidavit of Elizabeth Nicholson, who had exhibit "A" prepared. She explained the purpose of that exhibit and asserted that the statement in Hamilton's affidavit was inaccurate. Also, as Hamilton explained, there is a difference between being barred and being placed on the "no trespass" list. A person could be barred from the complex but not placed on the "no trespass" list and therefore not subject to arrest if found at the complex. Thus, taken in the light most favorable to plaintiffs, the sentence in exhibit "A" could indicate that the CPD could determine who would be *barred*, but not determine who would be placed

on the "no trespass" list, the latter being that which subjects the person to the criminal prosecution for violation.

Therefore, there is no genuine issue as to any material fact because plaintiffs have not alleged State action sufficient to sustain a cause of action for a deprivation of constitutional rights. Because there is no State action, the trial court properly granted summary judgment in favor of management and the Nagel Group. Moreover, plaintiffs failed to show an unconstitutional policy of placing individuals on the "no trespass" list; accordingly, the trial court also properly granted summary judgment in favor of the City, Hanna and Carter.

For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

STEIGMANN, P.J., concurs.

JUSTICE LUND, specially concurring:

*City of Quincy* rests on facts clearly different than here. In *City of Quincy*, a mother moved in with her son, a *possible* violation of the lease agreement, but hardly a trespasser. The use of trespass in *City of Quincy* was nothing other than an attempt to avoid the Forcible Entry and Detainer Act. Under the facts in *City of Quincy*, it is folly to uphold criminal actions. The present case is based upon entirely different facts—prior notice of limitation being quite significant!