(No. 76442.—

LAWRENCE A. WILLIAMS *et al.*, Appellants, v.
KARL NAGEL *et al.*, Appellees.

*Opinion filed October 27, 1994.—Rehearing denied
December 5, 1994.*

544

HARRISON, J., joined by FREEMAN, J., dissenting.

Malcolm Barnes, of Urbana, for appellants.

Lorna K. Geiler, of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., of Champaign, for appellees Karl Nagel *et al.*

Michael R. Cornyn, of Thomas, Mamer & Haughey, of Champaign, for appellees City of Champaign, Donald Hanna and Don Carter.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The plaintiffs, Lawrence A. Williams, Mansion W. Clark, and Donald F. Merriweather, were arrested for criminal trespass to land (Ill. Rev. Stat. 1991, ch. 38, par. 21—3) when they entered a private apartment complex in Champaign, Illinois, owned by the defendants, the Nagel Group, Inc. The plaintiffs also filed suit against the City of Champaign and two Champaign police officers, alleging that the City had developed a policy of barring persons from the apartment complex in violation of plaintiffs' civil rights. (42 U.S.C. § 1983 (1988).) The trial court granted summary judgment in favor of all defendants. That judgment was affirmed by the appellate court. (251 Ill. App. 3d 176.) We granted

the plaintiffs' petition for leave to appeal. (145 Ill. 2d R. 315.) For the following reasons, we affirm the judgment of the appellate court.

## FACTS

The Nagel Group, Inc. (Nagel Group), a private corporation doing business as Champaign Housing Associates, owns and operates a multiunit rental apartment complex in Champaign known as Parkside and Mansard Square Apartments (Parkside Apartments). The Nagel Group receives Federal funds in the form of rent subsidies through the office of Housing and Urban Development (HUD) and abides by HUD's regulations. All tenants residing in the Parkside Apartments are subject to the provisions contained in the lease and the Parkside Apartments rules and regulations. The Parkside Apartments rules and regulations contain the following provision:

"32. BARRED: Management has the right to bar individuals from the property. You must inform your guest(s) of all [Parkside and Mansard Square Apartments] rules and regulations. If rules and regulations are broken by your guests, they may be barred and/or arrested for criminal trespassing. If the rules and regulations are broken by a resident, it is grounds for termination of tenancy."

The management recorded the names of individuals that received the above notice on a "barred list." The Champaign police department and other local police authorities made recommendations to the management of Parkside Apartments to place individuals on the barred list because of their involvement in drug sales or other illegal activity. The following entities served notice to individuals barred from the complex: the Champaign police department, Yale Enforcement Service, Inc. (the security firm employed by Parkside Apartments), and the management of Parkside Apartments.

The barred notice provides that, effective immediately, the recipient of the notice is prohibited from

entering the premises of Parkside Apartments, including the common areas and parking lots, and is subject to arrest for trespass if found on the property. After an individual receives a barred notice, the management of Parkside Apartments decides whether that person's name should be placed on a "no trespass" list. If an individual who has received a barred notice and has also been placed on the "no trespass" list enters the premises of Parkside Apartments, he is subject to arrest for criminal trespass to land. (Ill. Rev. Stat. 1991, ch. 38, par. 21—3.) However, if an individual has only received a barred notice without being named on the "no trespass" list, management will not pursue criminal trespass violations against the individual if he or she enters the property.

The plaintiffs, who are not residents of Parkside Apartments, each received a notice barring them from entering the apartment complex and were subsequently arrested for criminal trespass to land because they entered the premises after they were barred therefrom. In their first amended complaint, plaintiffs claim that various friends and family members who are residents of Parkside Apartments extended open and permanent invitations to them to visit at their apartments. The plaintiffs allege that the barring practice employed by Parkside Apartments violates due process and constitutes impermissible State action because the Champaign police department decided which names should be placed on the "no trespass" list. Plaintiffs also claim that pursuant to section 21—3(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 21—3(c)), they had a statutory right to be present in the complex because of the invitations extended to them by certain tenants.

Before trial, the plaintiffs moved for both a temporary restraining order and preliminary injunction to

force the Nagel Group to permit them to enter the apartment complex. Upon motion by the defendants, the trial court entered summary judgment in favor of all defendants. The plaintiffs appealed the denial of the temporary restraining order, preliminary injunction, and the order granting summary judgment in the defendants' favor.

On review, the appellate court determined that the plaintiffs failed to file a timely appeal from the trial court's denial of the temporary restraining order and preliminary injunction. Additionally, the appellate court upheld the trial court's grant of summary judgment in defendants' favor, finding that the plaintiffs had presented no facts to show that their constitutional rights were violated. In this regard, the appellate court found that plaintiffs had failed to demonstrate "State action" necessary to establish a due process violation. The appellate court also found that plaintiffs had no common law or statutory right pursuant to section 21—3(c) of the Criminal Code to enter the complex. Accordingly, the appellate court affirmed the judgment of the trial court.

## ANALYSIS

A motion for summary judgment should be granted when the pleadings, depositions, and affidavits reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c); *Balla v. Gambro, Inc.* (1991), 145 Ill. 2d 492, 508.

## I

Before this court, the plaintiffs initially challenge the appellate court's determination that their due process rights were not violated. The plaintiffs argue that summary judgment was improperly granted because the

police involvement in barring plaintiffs from visiting their relatives and friends constitutes State action that violates their constitutional rights to freedom of movement, freedom of association and due process afforded by both the United States and Illinois Constitutions. In addition, plaintiffs argue, the barring practice employed by the defendants subjects them to false imprisonment and is an unlawful restraint upon their right to liberty.

The fourteenth amendment to the Constitution provides in relevant part that "[n]o State shall *** deprive any person of life, liberty, or property, without due process of law ***." (U.S. Const., amend. XIV.) The fourteenth amendment erects "no shield against merely private conduct, however discriminatory or wrongful." (*Shelley v. Kraemer* (1948), 334 U.S. 1, 13, 92 L. Ed. 1161, 1180, 68 S. Ct. 836, 842; *Moose Lodge No. 107 v. Irvis* (1972), 407 U.S. 163, 32 L. Ed. 2d 627, 92 S. Ct. 1965.) Therefore, in order to establish a violation of constitutional rights, a plaintiff must demonstrate that the conduct complained of is conduct by the State rather than conduct of private parties. Where the conduct is that of a private party, a plaintiff may establish State action by showing that the State has "significantly involved itself with invidious discriminations." (*Reitman v. Mulkey* (1967), 387 U.S. 369, 380, 18 L. Ed. 2d 830, 838, 87 S. Ct. 1627, 1634.) Upon such a showing, the discriminatory action will be imputed to the State and thereby fall within the ambit of the constitutional prohibition. There is no hard and fast rule to determine whether allegedly discriminatory conduct is private or whether the conduct amounts to "State action." "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Authority* (1961), 365 U.S. 715, 722, 6 L. Ed. 2d 45, 50, 81 S. Ct. 856, 860.

In *Blum v. Yaretsky* (1982), 457 U.S. 991, 1002, 73 L. Ed. 2d 534, 545, 102 S. Ct. 2777, 2785, the United States Supreme Court outlined a three-part analysis to determine whether State action exists. First, the complaining party must show that " 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.' " (*Blum*, 457 U.S. at 1004, 73 L. Ed. 2d at 546, 102 S. Ct. at 2786, quoting *Jackson v. Metropolitan Edison Co.* (1974), 419 U.S. 345, 351, 42 L. Ed. 2d 477, 484, 95 S. Ct. 449, 453.) "The purpose of [the close nexus] requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." (Emphasis in original.) (*Blum*, 457 U.S. at 1004, 73 L. Ed. 2d at 546, 102 S. Ct. at 2786.) Second, the State can be held responsible for private conduct only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the conduct must in law be deemed to be that of the State. (*Blum*, 457 U.S. at 1004, 73 L. Ed. 2d at 546, 102 S. Ct. at 2786; see also *Flagg Brothers, Inc. v. Brooks* (1978), 436 U.S. 149, 56 L. Ed. 2d 185, 98 S. Ct. 1729.) Third, the required nexus may be present if the private entity has exercised powers that are " 'traditionally the exclusive prerogative of the State.' " *Blum*, 457 U.S. at 1005, 73 L. Ed. 2d at 547, 102 S. Ct. at 2786, quoting *Jackson*, 419 U.S. at 353, 42 L. Ed. 2d at 485, 95 S. Ct. at 455.

In their first amended complaint, plaintiffs allege that the Champaign police department, at the instigation and direction of the two named defendant police officers, Donald Hanna and Don Carter, instituted a policy approved and jointly executed by the other defendants, whereby the Champaign police department became intimately involved and controlled virtually all

aspects of the procedure to bar plaintiffs from the apartment complex. The plaintiffs contend that the Nagel Group's tacit approval of the plan designed and implemented by the Champaign police department and its two police officers provides a sufficiently "close nexus" to constitute State action.

We reject plaintiffs' argument. Review of the affidavits submitted by the defendants belies plaintiffs' contention that the Nagel Group simply acquiesced in the plan allegedly developed by the Champaign police department that resulted in the plaintiffs' arrest for criminal trespass. Patricia Jeffers, vice-president of property management for the Nagel Group, submitted an affidavit describing the security process at Parkside Apartments. Jeffers stated that police officers and security officers have served barred notices to individuals at Parkside Apartments. After an individual is served with a notice by a police officer or security officer, Parkside Apartments requires that notification be given to the management. Following such notification, *Parkside Apartments* makes a determination as to whether that individual should be placed on the "no trespass" list. Jeffers stated that there have been occasions where management decided against following the recommendations of the police officers. In her affidavit, Jeffers stated that:

"Management for Parkside *** *has complete and total discretion* as to whether or not to place these individuals on the no-trespass list."

Likewise, the affidavit of Mark S. Hamilton, the manager of Yale Enforcement Service, corroborates Jeffers' description of the security process in effect at Parkside Apartments. He also stated that security for Parkside Apartments, employees of Parkside Apartments, and police officers had the authority to and did serve barred notices. However, no one was able to place an individual on the "no trespass" list *except the employees of*

Parkside Apartments. If an individual was served with a barred notice but was not placed on the "no trespass" list, security would not call the police to arrest that person when found upon the premises.

Defendant Donald Hanna, the former chief of police for the City of Champaign, submitted an affidavit stating that there was no policy, custom or practice of the police department to bar persons from entering any private property, including the premises of the Parkside Apartments. If persons were barred by the property owners, the police department would enforce the trespass laws. Hanna stated that the decision to bar persons from the complex was not made by the police department or through any policy of the police department. As chief of police, Hanna was not authorized by the Champaign city counsel to bar persons from private property or to make any policy that would permit police officers to make the decision to bar persons from private property.

Defendant Don Carter, the acting chief of police and former deputy chief of the Champaign police department, also submitted an affidavit stating that the Champaign police department had no policy to bar persons from Parkside Apartments. Carter stated that he was not aware of any policy of the Champaign police department to control the decision of the management of Parkside Apartments to bar persons from the property, nor did the police department make the decision to place the plaintiffs on the "no trespass" list. While the police officers did occasionally provide recommendations to private property owners concerning individuals who had been involved in criminal activity, such advice was not always followed. The police department did, however, enforce the criminal trespass laws.

Application of the three-part analysis developed in *Blum* to the instant case leads to the unmistakable

conclusion that the plaintiffs have presented no facts to show a sufficiently "close nexus" between the conduct of the Champaign police department and the Nagel Group to establish State action. While it is true that the Champaign police department did serve the barred notices, such conduct, in many instances, was born out of necessity. The record establishes that the police were often present to disperse unruly groups and intervene in altercations as they arose in the complex.

Most importantly, a barred notice alone would not subject an individual to arrest. As defendants point out, the only individuals subject to arrest for criminal trespass were those placed on the "no trespass" list. While the Nagel Group may have heard recommendations from the Champaign police department as to who should be placed on the "no trespass" list, such recommendations were purely advisory and the management of Parkside Apartments made all decisions concerning the "no trespass" list of its own accord. The affidavit submitted by property manager Patricia Jeffers of the Nagel Group unequivocally states that the management of Parkside Apartments reserves "complete and total discretion" as to whether or not to place an individual on the "no trespass" list. Jeffers' affidavit is corroborated by the affidavit of Mark Hamilton of Yale Security Services, who also clarified that a distinction exists between being served a barred notice and actually being placed on the "no trespass" list. Hamilton stated that no one was able to place an individual on the "no trespass" list except the employees of Parkside Apartments. Finally, Hanna and Carter testified that there was no policy, custom or practice of the Champaign police department to bar persons from the Parkside Apartments. However, if persons were barred from private property by the owners, the police department would enforce the trespass laws.

The defendants' affidavits reveal that the decision as to which individuals should be placed on the "no trespass" list rested in the sole discretion of the private property owners. The only evidence provided by the plaintiffs to suggest otherwise is found in Hamilton's affidavit, which contains the sentence that the Champaign police department had the authority to bar individuals from the complex. However, as we have discussed, the pivotal inquiry here focuses upon the placement of an individual's name on the "no trespass" list because it would subject an individual to arrest for criminal trespass, and not mere service of a barred notice. The service of a barred notice is a precondition to an individual's prosecution for trespass by providing notice that entry is forbidden. (Ill. Rev. Stat. 1991, ch. 38, par. 21—3.) The receipt of a barred notice does not, in and of itself, subject an individual to arrest. The affidavit of Mark Hamilton stated that if an individual were served a barred notice but not placed on the "no trespass" list, the security department would not call the police department to arrest the individual for trespass.

Upon review of the pleadings and affidavits submitted by the parties, we find that the plaintiffs have failed to raise any material question of fact concerning whether placement of an individual's name on the "no trespass" list constitutes State action. As a matter of law, we find that the placement of an individual's name on this list amounts to purely private conduct of the defendant Nagel Group. The Champaign police department neither placed individual names on the list nor exercised coercive power over the Nagel Group to decide which individuals should be placed on the "no trespass" list. As noted in *Blum*, "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." (*Blum*,

457 U.S. at 1004-05, 73 L. Ed. 2d at 547, 102 S. Ct. at 2786.) Accordingly, we find that summary judgment was properly entered in favor of all defendants because the plaintiffs have failed to establish that the conduct complained of constitutes State action.

## II

Alternatively, the plaintiffs assert that the Nagel Group has violated their statutory right to enter the private apartment complex because they were invited onto the premises by certain tenants in the apartment complex. The plaintiffs' statutory claim is based upon section 21—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 21—3), which provides in relevant part:

> "§ 21—3. Criminal trespass to real property. (a) Whoever enters upon the land or a building, other than a residence, or any part thereof of another, after receiving, prior to such entry, notice from the owner or occupant that such entry is forbidden, \*\*\* commits a Class C misdemeanor.
> \*\*\*
> (c) This Section does not apply to any person, whether a migrant worker or otherwise, living on the land with [the] permission of the owner or of his agent having apparent authority to hire workers on such land and assign them living quarters or a place of accommodations for living thereon, nor to anyone living on such land at the request of, or by occupancy, leasing or other agreement or arrangement with the owner or his agent, nor to anyone invited by such migrant worker or other person so living on such land to visit him at the place he is so living upon the land." Ill. Rev. Stat. 1991, ch. 38, par. 21—3(c).

The plaintiffs contend that section 21—3(c) carves an exception for circumstances such as those found in the present case where invitations have been extended to them by tenants residing in the apartment complex. However, section 21—3(c) is inapplicable in the instant case, for the plaintiffs had not received a valid invitation

from the tenants. As previously discussed, the tenants executed a lease at the time they moved into Parkside Apartments which stated that they agreed to abide by the provisions contained in the lease and the Parkside Apartments rules and regulations. As set forth in the rules and regulations:

"Management has the right to bar individuals from the property. You must inform your guest(s) of all [Parkside and Mansard Square Apartments] rules and regulations. If rules and regulations are broken by your guests, they may be barred and/or arrested for criminal trespassing. If the rules and regulations are broken by a resident, it is grounds for termination of tenancy."

In addition, the lease provides that the resident agrees to obey additional rules if the rules are reasonably related to the safety, care and cleanliness of the building and the safety, comfort and convenience of the residents.

A lease is a contract between landlord and tenant. (*Perry v. Waddelow* (1956), 145 F. Supp. 349.) The same rules are applicable to the construction of leases that are applicable to the construction of other contracts. (See *Valentin v. D.G. Swanson & Co.* (1960), 25 Ill. App. 2d 285; *7039 Wentworth Avenue Building Corp. v. Trough* (1947), 332 Ill. App. 635.) In the instant case, the tenants' failure to comply with the rules and regulations promulgated by the management of Parkside Apartments would constitute a breach of contract. See *7039 Wentworth Avenue Building Corp.*, 332 Ill. App. at 637.

As a condition to moving into the apartment complex, tenants agreed to abide by the terms set forth in their lease as well as the rules and regulations promulgated by the management. One of the terms to which tenants agreed was that Parkside Apartments, as lessor, reserved the right to bar persons from its property. Any tenant's attempt to invite an individual onto the property who had already been barred by management

would result in breach of the lease. Here, the plaintiffs had been barred from the premises by management. As a result, any attempt by tenants to invite the plaintiffs onto the premises would be invalid. Therefore, since a valid invitation was never extended to the plaintiffs, they do not fall within the scope of the exception set forth in section 21—3(c). Accordingly, we reject the plaintiffs' argument that the management of Parkside Apartments violated their statutory rights under section 21—3(c) to enter the property. Ill. Rev. Stat. 1991, ch. 38, par. 21—3(c).

### III

As a final matter, plaintiffs claim that Justice Robert J. Steigmann, a member of the appellate panel that decided this case on review, was prejudiced against plaintiff Williams. In 1971, Justice Steigmann was an assistant State's Attorney, and prosecuted Williams for armed robbery. Following Williams' petition to obtain executive clemency in 1977, Steigmann (then a circuit judge) wrote a letter to the Governor's counsel expressing his opposition to Williams' clemency petition. The plaintiffs argue that Justice Steigmann should have recused himself from this case, or alternatively, that plaintiffs' petition for rehearing should have been granted because of Justice Steigmann's prior knowledge of plaintiff Williams' background.

We reject the plaintiffs' argument. The plaintiffs failed to file a motion or even verbally notify the court at the time of oral argument that they objected to Justice Steigmann's presence on the panel. The plaintiffs did not sound an objection to Justice Steigmann's presence until the petition for rehearing following the release of the appellate court mandate. Therefore, this issue is waived. Additionally, we note that plaintiffs have failed to demonstrate any evidence of bias or prejudice whatsoever on the part of Justice Steigmann other

than conclusory allegations that his participation in the instant civil case approximately 20 years after he had prosecuted one of the plaintiffs in a criminal action was improper. We find, therefore, that the petition for rehearing based upon Justice Steigmann's impartiality in this cause was properly denied.

For the foregoing reasons, we find that there is no genuine issue of material fact as to the plaintiffs' claims alleging State action or violation of their statutory rights. Therefore, defendants were entitled to summary judgment as a matter of law. Accordingly, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE HARRISON, dissenting:

A person on leased premises at the invitation of the tenant is exempt from prosecution for criminal trespass to land. (See *People v. Flanagan* (1985), 133 Ill. App. 3d 1, 5; Ill. Rev. Stat. 1991, ch. 38, par. 21—3(c); see also *City of Quincy v. Daniels* (1993), 246 Ill. App. 3d 792, 795; *Karow v. Student Inns, Inc.* (1976), 43 Ill. App. 3d 878, 883.) Contrary to the view taken by the appellate court, this rule is not limited to migrant workers. It applies to any person, whether a migrant worker or otherwise, invited on the land by a tenant. See *People v. Flanagan*, 133 Ill. App. 3d at 4.

The majority does not take issue with these principles. Rather, it contends they are inapplicable because the invitations here were invalid. They were invalid, according to the majority, because they violated the provisions of the tenants' leases. 162 Ill. 2d at 555-56.

Although this contention has superficial appeal, it has no support in the law. No one would dispute that a landlord has the right to place some restrictions on his tenants' right to have guests on the premises. That right, however, is not enforceable through criminal prosecution. If a tenant agrees to the landlord's restrictions

as a condition of the lease, the restrictions have the force of contract, and their violation may place the tenant in breach, subjecting him to eviction. In such a case, the forcible entry and detainer statute (Ill. Rev. Stat. 1991, ch. 110, par. 9—101 *et seq.*) would provide the sole means for settling the dispute. The criminal trespass law could not be invoked. See *People v. Evans* (1987), 163 Ill. App. 3d 561, 565.

If a tenant cannot be criminally prosecuted for violation of the terms of a lease, I fail to see how we can make the lease grounds for criminal prosecution of anyone else. To hold otherwise is tantamount to finding that private parties have the right to alter the criminal law through contractual agreements. This is manifestly impermissible. If a landlord could use lease provisions to restrict what constitutes an "invitation" within the meaning of the law, he would have the power to defeat the very purpose of section 21—3(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 21—3(c)). The statute would be rendered a nullity.

No matter how strenuously the landlord objected to the presence of the plaintiffs in this case, the fact remains that they were invited by the tenants of the complex to be there. Nothing in the law of criminal trespass gave the landlord the right to nullify that invitation. As a result, the police had no grounds to arrest plaintiffs or to threaten to arrest them for criminal trespass to land.

An individual's right to be free from unlawful arrest and imprisonment unquestionably implicates a liberty interest protected by the Federal Constitution, the violation of which may give rise to a cause of action under 42 U.S.C. § 1983 (1988). (See *Motes v. Myers* (11th Cir. 1987), 810 F.2d 1055, 1059.) To recover under that statute, a plaintiff must show that the violation was committed by a defendant acting under color of State

law. (*Jones v. Gutschenritter* (8th Cir. 1990), 909 F.2d 1208, 1211.) This statutory color-of-State-law requirement is satisfied where the offending conduct meets the State-action requirement of the fourteenth amendment (U.S. Const., amend. XIV). *Lugar v. Edmondson Oil Co.* (1982), 457 U.S. 922, 935 n.18, 73 L. Ed. 2d 482, 494 n.18, 102 S. Ct. 2744, 2752 n.18.

In concluding that there was no State action here, the majority mistakenly relies on the language of *Blum v. Yaretsky* (1982), 457 U.S. 991, 73 L. Ed. 2d 534, 102 S. Ct. 2777, which involved a due process challenge to the decision of private nursing homes to discharge or transfer Medicaid patients. Although the Supreme Court rejected that challenge, it expressly distinguished the situation from those cases where the defendant is a private party whose conduct has received the imprimatur of the State or where private motives have triggered the enforcement of State laws by governmental officials who are themselves named as defendants. (*Blum*, 457 U.S. at 1003-04, 73 L. Ed. 2d at 546, 102 S. Ct. at 2785.) In such cases, the analysis is more straightforward. To meet the State-action requirement, a plaintiff must show that the person charged with the deprivation is a State official or has acted together with or obtained significant aid from State officials, or that the conduct at issue is otherwise chargeable to the State. *Motes*, 810 F.2d at 1058.

The majority compounds its error by misapprehending the nature of the offending conduct. The majority focuses on the practice of putting persons' names on a "no trespass" list, but this dispute involves far more than that. The real basis for plaintiffs' challenge is the abuse of the criminal trespass statute to assist the landlords in managing their property.

In the case before us, State officials, namely, the Champaign police, were directly involved in the depri-

vation charged by plaintiffs. Although the police may not have formulated the scheme to keep plaintiffs and others off the property, they are the ones who enforced that scheme by arresting and threatening to arrest persons invited onto the premises by the tenants. As previously noted, such arrests were unlawful. The United States Supreme Court has long held that police officers who act unlawfully in the course of their duties are subject to liability under 42 U.S.C. § 1983. *Monroe v. Pape* (1961), 365 U.S. 167, 5 L. Ed. 2d 492, 81 S. Ct. 473.

The unlawful arrests and threat of arrests were not sporadic or isolated events. To the contrary, the record indicates that the police and the landlords were engaged in a joint enterprise to systematically rid the premises of those they regarded as undesirable. The landlords decided whom they wanted to exclude, and the police used their arrest powers to exclude them.

Because the landlords were jointly engaged with the police in the unlawful use of the criminal trespass statute, they can be characterized as having acted under color of State law and are subject to liability under 42 U.S.C. § 1983 (1988). (See *Lugar*, 457 U.S. at 941-42, 73 L. Ed. 2d at 498, 102 S. Ct. at 2756; *Howerton v. Gabica* (9th Cir. 1983), 708 F.2d 380, 384-85 (landlords deemed to have acted under color of State law where they repeatedly requested aid by police to effect an eviction, and the police intervened at every step).) The City of Champaign is also subject to liability because the police program to aid the landlords through unlawful use of the criminal trespass statute can fairly be said, under the record now before us, to represent municipal policy. See *Collins v. City of Harker Heights* (1992), 503 U.S. 115, 120-22, 117 L. Ed. 2d 261, 270-71, 112 S. Ct. 1061, 1066.

Under established law, plaintiffs have thus advanced a cognizable claim under 42 U.S.C. § 1983 (1988) against

the various defendants named in their amended complaint. By ruling otherwise, the majority eviscerates the statute and gives free rein to private landlords to substitute the coercive power of the police for the civil eviction remedies created by our General Assembly. Until today, the sole recourse for a landlord who disapproved of his tenant's guests was to terminate the tenancy. Now, there is no longer a need to bother with civil process. The landlord can just call the police and have the tenant's guests hauled away to jail. That the guests may include the father of the tenant's children, or the tenant's son, or some other family member is apparently of no consequence.

Such a result is as offensive as it is unprecedented. As much as we may sympathize with the need of property owners to protect their investments and insure that their tenants have a safe place to live, they have no more of a claim on the authority of the State than do their renters or the friends and relatives of their renters. Under the Federal Constitution it could not be otherwise.

Plaintiffs should be permitted to proceed with their action. I therefore dissent.

JUSTICE FREEMAN joins in this dissent.