ROTARY CLUB OF CHICAGO, Plaintiff-Appellee, *v.* HARRY F. SHEA & COMPANY *et al.*, Defendants-Appellants.

First District (5th Division)   No. 83—2178

Opinion filed December 23, 1983.

William M. Getzoff, of Chicago, for appellants.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Raymond J. Kelly and Joan M. Gale, of counsel), for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

This action was brought by Rotary Cub of Chicago (the Club) seeking a declaration that its last annual election of officers and directors is binding and valid and an order enjoining defendants from proceeding with a second election and prohibiting defendant Byron M. Getzoff (Getzoff) from continuing to hold himself out as president of the Club. A temporary restraining order was entered prohibiting defendants from counting the ballots of the second election, and their motion to dissolve that order was denied. Thereafter, a preliminary injunction was entered ordering that the sealed, uncounted ballots remain in the court's custody and that Getzoff be enjoined from holding himself out as president. In this interlocutory appeal, pursuant to Supreme Court Rule 307 (87 Ill. 2d R. 307), defendants contend that the trial court abused its discretion in (a) failing to grant their motion to reconsider its refusal to dissolve the temporary restraining order; and (b) entering the preliminary injunction.

The facts of this case are largely undisputed and establish that the Club held its annual election of officers and directors on April 5, 1983 (the April election). Prior to the election, the Club's nominating committee presented a slate of officers and directors which included the nomination of then president-elect Norman Kloker (Kloker) for president. Two alternate slates were presented by Club members pursuant to the procedures prescribed in the Club's bylaws. One slate nominated Gary Mann for president, but otherwise duplicated the nominating committee's slate; the other put forth entirely different nominees for each office, but did not contain a nomination for president. The ballot sent to the membership listed the candidates for each office in alphabetical order under the designation of the office for which they were nominated. The reverse side of the ballot contained a statement that "[i]n accordance with the by-laws the following nominations have been duly made and are hereby certified under their respective Articles," and a listing of the three slates with the designations "NOMINATING COMMITTEE SLATE" appearing above one slate and "NOMINATIONS BY MEMBERS" appearing above the others. After these ballots were counted, Gary Mann was declared the newly-elected president of the Club; the other officers and directors elected were those nominated by the nominating committee and one

group of members.

Shortly after the April election, Kloker and another member filed a protest with the Club's rules committee on the ground that inclusion of the three slates and a designation of their origin on the reverse side of the ballot was contrary to the bylaws. The rules committee found the April election valid, and the protest was taken to the Board of Directors (the Board), which also rejected the protests and declared the April election valid. An appeal of that decision was filed on April 27, 1983, pursuant to Article III, section 2(b) of the Club's bylaws, which provides in pertinent part:

"Appeal from any decision of the Board of Directors \*\*\* shall be made in writing to both the President and the Executive Secretary \*\*\* within fifteen days from the date of such decision. Notice of such appeal shall be given the members of the Club forthwith by the Executive Secretary and such appeal shall be acted upon not later than the second meeting of the Club following the expiration of the time specified for appeal."

It appears from minutes of a Board meeting held on June 20, 1983, that two appeals were filed challenging the election, although it is unclear when the second appeal was filed or what it concerned. However, it is undisputed that no notice of appeal was sent to the members, nor was an appeal brought before a meeting of the members as prescribed in the bylaws. Instead, the Board appointed an *ad hoc* committee which was apparently charged with reviewing the election procedures and conducting negotiations with the members presenting the appeals. Getzoff testified that the Board directed the executive secretary to take no action concerning "the appeal" pending a report of that committee, but he did not state whether he was referring to one or both appeals.

On June 14, 1983, Getzoff—then president of the Club—announced at the regularly-scheduled weekly luncheon meeting that a discussion of the April election would be held at the next weekly meeting on June 21 (the June 21 meeting). On June 20, the *ad hoc* committee reported to the Board that, in its opinion, the election was valid. The Board then voted to disallow both appeals, and directed Getzoff "to cancel the members only meeting on June 21st by direction of the Board of Directors" because the meeting was not called by the Board and proper notice thereof had not been given to the membership.

During the June 21 meeting, Getzoff announced that he had been directed to cancel the discussion. A motion was made from the floor and seconded that the members proceed with the discussion and, after being advised by the parliamentarian that the motion was in order,

Getzoff put the question to a vote and it carried by an unreported margin. Getzoff then asked that all nonmembers leave, although it appears that some nonmembers may have remained throughout the subsequent discussion and voting. The members present then debated the propriety of the April election and approved, by a vote of 130 to 80, a resolution declaring the April election invalid and calling for a new election. Getzoff announced that he would remain in office until his successor was elected, and that a new election would be held within 30 days (the special election).

At a Board meeting later that day, the members of the Board expressed their displeasure at Getzoff's failure to follow their directive and their feeling that the action taken by the members was improper, but no action was taken other than a decision to include biographical data on the candidates when a special election ballot was sent. However, at a June 30 meeting, the Board affirmed its ruling that the April election was valid, declared that the officers and directors elected on that date would assume office as scheduled on July 1, 1983, and stated "that any attempted action of the members during the business portion of the [June 21 meeting] without proper notice to all members of the [Club], [was] null and void and in direct violation of the Constitution and by-laws of the [Club] and the laws of the State of Illinois." All members were advised by letter of these actions, and the executive secretary was instructed to disregard the resolution calling for a special election.

Thereafter, Getzoff established a three-member committee to proceed with the special election, and Harry F. Shea & Company (Shea), a certified public accounting firm, was engaged to supervise the balloting. Shea was given a roster of members and sent a packet of voting materials to each of the members listed therein. Among those materials were a ballot identical to the ballot provided for the April election (including two nominees for the office of president), but without the list of slates on the reverse side; a signature card; envelopes for sealing the ballot and returning it; a copy of the section of the by-laws concerning elections; and a letter signed by Getzoff as president and dated July 15, 1983. Getzoff explained therein what had occurred at the June 21 meeting and the June 30 Board meeting, that ballots were to be returned to Shea by July 25 and that the opening and counting of the ballots would be supervised by the special election committee, but two members of the Club's rules committee would be invited to participate. New officers and directors were to take office on August 1.

On July 22, 1983, the Club filed the instant action seeking decla-

ration that the April election was valid and an order restraining the opening and counting of ballots from the special election and prohibiting Getzoff from holding himself out as president. A temporary restraining order was entered on that date enjoining any further proceedings with regard to the special election and directing that the sealed ballots be delivered to the court. Defendants moved to dissolve the order, arguing that the action was not authorized by the Board and that the verified complaint filed in support thereof contained knowingly false statements of material facts. At a hearing on the motion, Getzoff conceded that the special election did not comply with all of the requirements of the bylaws, explaining that, under the circumstances, strict compliance therewith was impossible. The motion was denied, as was a later motion to reconsider, and the trial court granted the Club's petition for a preliminary injunction, ordering that the ballots remain in the court's custody and enjoining Getzoff from acting as president of the Club "during the tenure of the current President Gary Mann's term of office." This appeal followed.

OPINION

Defendants first contend that the trial court abused its discretion in refusing to either dismiss the complaint with prejudice or dissolve the temporary restraining order, maintaining that the verified complaint upon which entry of the temporary restraining order was based contained perjury. In that complaint, the Club stated that the voting at the June 21 meeting "was improper in that non-members were not asked to leave and some of them were observed voting." The complaint was verified by a director and the executive secretary of the Club, who stated that they had personal knowledge of the matters contained therein and the facts stated were true. However, at a hearing on the motion to dissolve, both testified that while no announcement was made prior to the vote on the motion to hold the discussion, Getzoff did ask nonmembers to leave prior to discussing and voting on the resolution to declare the April election invalid. The executive secretary further stated that he had heard that nonmembers were present during the later voting, but had no personal knowledge of the fact; while the director testified that he saw nonmembers present at that stage of the proceedings, but his statement that they had voted was based on hearsay. The trial court ordered the above sentence stricken from the complaint, but denied the motion to dissolve the temporary restraining order, finding that the facts stated therein were not material to the entry of that order. It is defendant's position here that the action taken by the trial court was insufficient; in effect,

they argue that the court should have dismissed the entire complaint with prejudice or, in the alternative, dissolved the temporary restraining order.

Initially, it is our view that the question whether the trial court abused its discretion in refusing to dissolve the temporary restraining order is moot. As defendants concede, that order has merged with the preliminary injunction and, while a temporary restraining order is appealable under Rule 307 (*Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 303 N.E.2d 1), we have held that where the temporary restraining order has expired, and the record does not indicate the possibility that defendant would suffer compensable damages in the event that order was wrongfully issued, any questions raised by the refusal to dissolve the temporary restraining order were moot because reversal thereof could have no practical effect on the controversy (*City of Chicago v. Airline Canteen Service, Inc.* (1978), 64 Ill. App. 3d 417, 380 N.E.2d 1106). Similarly here, since the temporary restraining order has merged with the preliminary injunction and because it does not appear from the record that any compensable damages may have been suffered, reversal of the trial court's denial of the motion to reconsider its refusal to dissolve the temporary restraining order would not have any practical effect on the controversy.

Defendants do not argue that verification of the facts in question influenced the entry of the preliminary injunction, nor does it appear that such was the case, since that portion of the complaint was stricken prior to entry thereof. The only argument raised with regard to the preliminary injunction is that, instead of granting the injunction, the trial court should have "denied any relief"; *i.e.*, it should have dismissed the complaint with prejudice because the Club came before the court with "unclean hands." However, assuming that the motion to dissolve and the argument made thereon may be considered a motion to dismiss, we believe that this question is not properly before us on an interlocutory appeal pursuant to Supreme Court Rule 307. The refusal to dismiss a complaint is not subject to interlocutory appeal, for it is neither a final order appealable pursuant to Supreme Court Rules 301 or 304 (87 Ill. 2d Rules 301, 304; see *Camp v. Chicago Transit Authority* (1980), 82 Ill. App. 3d 1107, 403 N.E.2d 704) nor is it appealable under any of the exceptions set forth in Rule 307 (see *People ex rel. Fahner v. Community Hospital* (1982), 108 Ill. App. 3d 1051, 440 N.E.2d 200). Therefore, since the issue is not properly before us, we will not consider this contention of defendants.

Defendants next contend that the trial court erred in entering

the preliminary injunction. They acknowledge that the issuance thereof is within the discretion of the trial court (*S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 377 N.E.2d 73) and that the sole question before us on an interlocutory appeal is whether that discretion has been abused (*Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 422 N.E.2d 1166), but assert that such abuse has occurred in the instant case.

■ The party seeking a preliminary injunction must establish by a preponderance of the evidence that it is entitled to that remedy by showing that (1) it has a clearly ascertained right which must be protected; (2) it will be irreparably injured in the absence of that protection; (3) it has no adequate remedy at law; and (4) it is likely to be successful on the merits. (*Cross Word Products, Inc. v. Suter* (1981), 97 Ill. App. 3d 282, 422 N.E.2d 953.) In the instant action, defendants first assert that because the trial court refused the Club's request to include a finding that the April election was valid and binding in its order granting the preliminary injunction, the Club has failed to show that it has any rights in need of protection or that it is likely to succeed on the merits. In effect, they argue that the trial court had to decide the merits of the action prior to granting any preliminary relief. We disagree.

■ ■ In considering the propriety of a preliminary injunction to preserve the status quo pending a final decision on the merits, the trial court does not decide contested issues of fact (*City of Chicago v. Airline Canteen Service, Inc.* (1978), 64 Ill. App. 3d 417, 380 N.E.2d 1106) nor decide the merits of the action (*Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 422 N.E.2d 1166), and in reviewing its decision, we will consider the substantive issues only to the extent necessary to determine whether the trial court has abused its discretion (*Oscar George Electric Co. v. Metropolitan Fair & Exposition Authority* (1982), 104 Ill. App. 3d 957, 433 N.E.2d 958). Furthermore, the party seeking an injunction need not "make out a case which in all events will warrant relief in the final hearing." (*People ex rel. Fahner v. Community Hospital* (1982), 108 Ill. App. 3d 1051, 1057, 440 N.E.2d 200, 205.) "All that is necessary is that the petitioning party raise a fair question as to the existence of the right claimed, lead the court to believe that he probably will be entitled to the relief prayed for if the proof should sustain his allegations, and make it appear advisable that the position of the parties should stay as they are until the court has had an opportunity to consider the case on the merits" (*Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 500, 422 N.E.2d 1166, 1171), and our sole concern is whether there was a

sufficient showing on these questions to sustain the trial court's order (*City of Chicago v. Airline Canteen Service, Inc.*).

■ Defendants maintain that in the absence of a declaration that the April election was valid, the officers and directors elected at that time are merely *de facto* officers and have no rights to be protected and thus are not likely to succeed on the merits, relying on *Waterman v. Chicago & Iowa R.R. Co.* (1892), 139 Ill. 658, 29 N.E. 689. However, we believe that *Waterman* provides no support for their position. In that case, an officer of a corporation sought to recover salary for the two years during which he acted as president. The court found that he was not entitled to the relief requested because the board of directors which elected him "was neither a *de jure* nor a *de facto* board" (139 Ill. 658, 668, 29 N.E. 689, 692), because their own election was improper and they had never controlled the corporation; therefore, it reasoned, the officer in question never became the rightful president. However, it went on to note that "a certificate of election, commission, or other evidence, may be, under some circumstances, *prima facie* or even conclusive evidence of a *de jure* right." (139 Ill. 658, 669, 29 N.E. 689, 692.) In the instant case, the election in question has been declared valid by the Club's rules committee, pursuant to its duty under section 28 of the Club's Manual of Operating Rules and Procedures to act as the judge of elections, and its decision has been affirmed on appeal to the Board pursuant to its duties under the Club's constitutions and bylaws to manage the Club and to act as a board of appeals from all committee actions. No question having been raised as to the *de jure* status of that Board, we believe that their action served to certify the election and is evidence of its validity. The trial court, in refusing to declare the election valid before hearing more evidence, apparently considered the Board's action *prima facie* rather than conclusive evidence of the election's validity, and it is our view that the above showing was sufficient to sustain the court's order.

■ Defendants posit, however, that further evidence on that question is unnecessary, and the court therefore should have ruled "as a matter of law" that the election was invalid. They assert that the ballot was clearly improper because (a) the bylaws are "ambiguous" regarding whether the office of president-elect is an elective office, and the court therefore should have ruled that it is not, and (b) it can be "implied" from the bylaws that a listing of the slates on the reverse side of the ballot is improper. However, we have read the bylaws and believe that they are, at best, ambiguous on both points, and the trial court properly refused to rule on their validity prior to hear-

ing further evidence. Furthermore, it appears that should the trial court find that the Club's interpretation of the bylaws on this question is correct, it would be entitled to all of the relief requested. Such a showing is sufficient to sustain the court's entry of a preliminary injunction.

■ Nevertheless, defendants further argue that the election was declared invalid by the membership during the June 21 meeting; therefore, they assert, Getzoff remained as president, and the special election was proper. However, we believe that the evidence before the court established that the action taken on June 21 was contrary to the bylaws and therefore did not constitute a declaration that the April election was invalid. Once the Board declared the election valid, the only method provided under the Club's bylaws to overturn that decision was an appeal to the membership. Article III, section 2(a) of the bylaws provides that "on such appeal the decision appealed from shall be reversed only by two-thirds vote of the members present and voting *** notice of such appeal having been given by the Executive Secretary to all members of the club at least thirty days in advance of such meeting." Defendants concede that no notice was given to the entire membership, and that the motion presented at the June 21 meeting did not receive two-thirds of the votes of the members present and voting, but they maintain that the action taken was not an appeal, arguing that under Robert's Rules of Order the membership acts as the judge of any questions regarding an election. Therefore, they assert, the notice requirement was inapplicable, and a majority vote was sufficient to sustain the motion. However, article VI, section 12 of the Club's bylaws provides that "[t]he proceedings of [the Club] and of its directors and its committees shall be governed by and conducted according to the latest edition of Robert's Manual of Parliamentary Rules, except as otherwise provided herein, or by a rule or manual of rules adopted by the Board of Directors." The Club's Manual of Operating Rules and Procedures provides that the rules committee "shall act as the Judge of Elections at all elections," and the sole method of reviewing that committee's actions is by an appeal to the Board, followed by an appeal to the membership. Since the procedures outlined in the bylaws were not followed, the Board's decision has never been declared invalid.

Furthermore, it is no answer, as defendants alternatively argue, that they had no choice but to proceed as they did, in violation of the bylaws, because the Board improperly frustrated the appeal to the membership. The bylaws are binding on the members as well as on the officers of the organization (*Board of Trade v. Nelson* (1896), 162

Ill. 431, 44 N.E. /43), for they are in the nature of a contract between the corporation and its members (*Norris v. South Shore Chamber of Commerce* (1981), 98 Ill. App. 3d 32, 424 N.E.2d 76). Thus, the members' recourse in the instant case was to compel the Board to comply with the bylaws regarding appeals, not to violate those bylaws themselves.

Finally, defendants contend that the Club failed to show irreparable injury justifying issuance of a preliminary injunction. The standard to be applied is whether "the remedy at law is inadequate in that monetary damages will not adequately compensate plaintiff or cannot be measured by pecuniary standards." (*Bally Manufacturing Corp. v. JS&A Group, Inc.* (1980), 88 Ill. App. 3d 87, 94, 410 N.E.2d 321.) In the instant case, Getzoff's actions in holding himself out as president and improperly proceeding with the special election cast doubt on the validity of the decisions and actions of the present directors and officers. In addition, according to the Club, his actions have caused disruption and confusion among the membership. Clearly, such damage is of a continuing nature and cannot be measured by pecuniary standards; injunctive relief is therefore the only means by which the injury can be redressed.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.