CHARLES A. HARPER, Plaintiff-Appellee, v. MISSOURI PACIFIC
RAILROAD COMPANY *et al.*, Defendants-Appellants.

Fifth District    No. 5—93—0803

Opinion filed June 30, 1994.

240

Thomas E. Jones and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellants.

Roger C. Denton, Steven J. Stolze, and Steven L. Groves, all of Schlichter, Bogard & Denton, of Fairview Heights, for appellee.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:
The defendants, Missouri Pacific and Union Pacific Railroad Company, appeal from the trial court's entry of a preliminary injunction which prohibits the defendants from "carrying out their practice, policy, and use of letters requiring knowledge and consent of employee witness interviews concerning facts incident to FELA [Federal Employers Liability Act (45 U.S.C. § 51 *et seq.* (1993))] claimants' injuries, or in any way interfering with their employees regarding such claims, until further order of [the] Court," the court finding that the practice is void pursuant to section 60 of the FELA (45 U.S.C. § 60 (1993)). The defendants also appeal from the trial court's entry of a temporary restraining order (TRO) enjoining the same acts of the defendants as those enjoined under the preliminary injunction.

We consider three issues on appeal: (1) whether the defendants preserved their right to appeal the trial court's denial of their motion to dissolve the TRO; (2) whether the trial court abused its discretion in entering the preliminary injunction; and (3) whether the preliminary injunction is overly broad. For reasons we will more fully state herein, we affirm in part and reverse in part.

Plaintiff, Charles A. Harper, filed a complaint against the defendants on November 19, 1993. The first count alleged negligence under the FELA. The second count asked for a declaratory judgment that the defendants' practice of requiring consent before plaintiffs' attorneys were allowed to talk to railroad employees in the investigations of FELA claims was barred pursuant to section 60. The third count requested temporary and permanent injunctive relief from the defendants' policy of requiring notice of and prior consent to interviews with railroad employees who were witnesses to or who had information concerning FELA claims.

The Federal statute which plaintiff claims the defendants have violated is, *inter alia*, as follows:

"Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest *** shall [be subject to criminal penalties.]" 45 U.S.C. § 60 (1993).

## I. TEMPORARY RESTRAINING ORDER

On November 22 through 24, 1993, plaintiff's attorney sent written notices of a hearing set for November 24, 1993, to several different attorneys representing the defendants. Copies of the complaint, including the request for the TRO, were delivered to at least two attorneys for the defendants. Due to the unavailability of the trial judge, no hearing was conducted on plaintiff's request for a TRO on November 24, 1993. No one appeared for the defendants at the Madison County courthouse on November 24, 1993.

On November 29, 1993, plaintiff's attorney appeared before the trial court, and the TRO was entered, based upon the allegations of the verified complaint and attached affidavits. Plaintiff's attorney informed the trial court that he had called the defendants' law department in St. Louis, Missouri, that morning informing the defendants of the hearing on that date. The trial court entered the TRO, specifically finding that the defendants had actual knowledge of the motion for the TRO but had failed to appear. The TRO enjoined the defendants from "the practice of requiring knowledge and consent of witness/employee interviews concerning facts incident to FELA *** claimants' injuries or in any way interfering with ex parte communication by plaintiffs' attorneys with its employees regarding such claims." The TRO was entered at 10:30 a.m. on November 29, 1993, and was to remain in effect until December 7, 1993.

On December 6, 1993, the railroad filed a motion for dissolution of the temporary restraining order. On December 7, 1993, before the court began its hearing on plaintiff's request for a preliminary injunction, the trial court heard extensive arguments from both parties concerning the railroad's motion to dissolve the TRO. The trial court denied the motion to dissolve the TRO. On December 7, 1993, the railroad filed its notice of appeal pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)) from the order denying its motion to dissolve the TRO.

Supreme Court Rule 307(a)(1) provides:

> "An appeal may be taken to the Appellate Court from an interlocutory order of court
>
>> (1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." (134 Ill. 2d R. 307(a)(1).)

Under subsection (a) of Rule 307, the notice of appeal must be filed within 30 days from the entry of the interlocutory order. 134 Ill. 2d R. 307(a).

■ Turning now to the issues in the case at bar, it is apparent that whether the defendants had notice or not is irrelevant. The TRO expired by its own terms on December 7, 1993, the day that the trial court denied the defendants' motion to dissolve. In *People v. Conrail Corp.* (1993), 251 Ill. App. 3d 550, 622 N.E.2d 29, the court pointed out:

> "A case becomes moot when, pending the decision on appeal, events occur which render it impossible for the reviewing court to grant effectual relief to any of the parties. [Citation.] An injunction that has expired can no longer be dissolved because the court cannot dissolve that which no longer exists." (*Conrail Corp.*, 251 Ill. App. 3d at 557, 622 N.E.2d at 34.)

By the time the notice of appeal from the denial of the motion to dissolve the TRO reached this court, there was nothing to dissolve. Moreover, the preliminary injunction was issued on December 7, 1993, and it superseded the TRO, which would make the TRO moot even if its term had not expired. We need not, therefore, discuss whether the written notices sent by plaintiff to the defendants' attorneys of a hearing asking for a TRO on November 24, 1993, delivery of copies of the complaint to two of the defendants' attorneys, and a telephone call to the defendants' law department on November 29, 1993, to tell counsel of the hearing on that date were sufficient notice to the defendants.

There apparently is some confusion about TROs and about what a defendant must procedurally do to protect and defend against a TRO. (See *People v. Conrail Corp.* (1993), 251 Ill. App. 3d 550, 622

N.E.2d 29; *Williams v. Nagel* (1993), 251 Ill. App. 3d 176, 620 N.E.2d 1376, *appeal allowed* (1994), 154 Ill. 2d 570, 631 N.E.2d 719; *People v. Conrail Corp.* (1993), 245 Ill. App. 3d 167, 613 N.E.2d 784.) It should be noted from the outset that a TRO is a quick, short-term process that is intended to maintain the status quo. It is not meant to be an instrument that causes protracted litigation because of its brief duration due to expiration by its own terms, cessation by law, or supersedence by an order entered in the proceeding for a preliminary injunction. The propriety of the issuance of the TRO becomes moot once the TRO is no longer in existence, except for the question of assessing damages for the wrongful issuance of such. 735 ILCS 5/11—110 (West 1992); *Conrail Corp.*, 251 Ill. App. 3d 550, 622 N.E.2d 29.

There are two types of TROs, those granted with notice to the adverse parties and those that are granted without notice, *ex parte*, to the adverse parties. Either way, relief from a wrongful granting or denial of the TRO should be rendered expeditiously.

■ Part of the confusion apparently arises from the fact that Rule 307 was amended in 1988, effective January 1, 1989, by the addition of paragraph (d), which provides as follows:

"(d) Appeals of Temporary Restraining Orders; Time; Memoranda.

(1) *Petition; Service; Record.* Unless another form is ordered by the Appellate Court, review of the granting or denial of a temporary restraining order as authorized in paragraph (a) shall be by petition filed in the Appellate Court, but notice of interlocutory appeal as provided in paragraph (a) shall also be filed, within the same time for filing the petition. *The petition* shall be in writing, state the relief requested and the grounds for the relief requested, and *shall be filed in the Appellate Court,* with proof of personal service, *within two days of the entry or denial of the temporary restraining order from which review is being sought.* \*\*\*

(2) *Legal Memoranda.* The petitioner may file a memorandum supporting the petition which shall not exceed 15 typewritten pages and which *must also be filed within two days of the entry or denial of the temporary restraining order.* \*\*\* \*\*\*

(4) *Time for Decision; Oral Argument.* After the petitioner has filed the petition, \*\*\* the Appellate Court shall consider and decide the petition within two days thereafter." (Emphasis added.) 134 Ill. 2d R. 307(d).

The defendants cite *Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 303 N.E.2d 1, wherein our supreme court held that the refusal to dissolve a temporary restraining order is appealable under

Rule 307(a)(1). Since subsection (d), dealing specifically with TROs, was added to Rule 307 in 1988 (see 107 Ill. 2d R. 307 for the rule prior to January 1, 1989), subsection (a) has been superseded and, therefore, the *Bohn Aluminum* ruling is no longer applicable to appeals of TROs. All matters pertaining to TROs should comport with the intent and purpose of Rule 307(d), which is to provide a process for a quick review of the granting or denial of a TRO.

The process under Rule 307(d) is clear when a plaintiff has given notice to the defendant of its intent to obtain a TRO and the defendant appears in opposition before the circuit court. The aggrieved party has two days to file its notice of interlocutory appeal and petition in the appellate court.

■ The process is not so clear where the defendant is given only minimal notice, such as in *American Warehousing Services, Inc. v. Weitzman* (1988), 169 Ill. App. 3d 708, 533 N.E.2d 366, where plaintiff telephoned defendant 30 minutes prior to appearing before the trial court, but where the defendant failed to appear for some reason. The question arises in such a case, assuming that the notice was proper, as to whether the defendant may file a motion to dissolve or must the defendant immediately file its notice of interlocutory appeal and petition in the appellate court? There is no prohibition that we are aware of against the filing of a motion to dissolve in this situation, and in fact, we encourage such because it provides the trial court with the opportunity to void or modify the TRO, if justice requires. Further, it provides an opportunity for the parties to agree to a particular TRO pending the hearing for a preliminary injunction, and thus, an appeal may be avoided. However, in the situation where the defendant had notice of the TRO, the defendant should be prepared to comply with the jurisdictional requirement of Rule 307(d) by filing his notice of appeal and petition in the appellate court within two days of the issuance of the TRO in the event the trial court denies or fails to hear the motion to dissolve within two days of the issuance of the TRO. If the defendant fails to perfect his appeal within two days of the granting of the TRO, this court lacks jurisdiction to hear such.

We next review the situation where a TRO is granted without notice to the adverse party. Section 11—101 of the Code of Civil Procedure provides:

"On 2 days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require." (735 ILCS 5/11—101 (West 1992).)

Rule 307(d) provides that an appropriate supporting record shall accompany the petition for an appeal of a TRO. It would appear that since the adverse party must obtain all the documents, certifications, or affidavits necessary for a supporting record on appeal, the adverse party most likely would avail itself of one more remedy, that is, obtaining a ruling on a motion to dissolve from the trial court before appealing.

May an adverse party, who did not have notice of the hearing in which the TRO was granted *ex parte*, appeal without filing a motion to dissolve if the TRO has been granted more than two days prior to service on the adverse party? We choose not to suggest an answer at this time.

We are also cognizant of Rule 307(b), which provides for appeals when interlocutory orders are entered on *ex parte* applications, provided a motion to vacate the order is first presented to the trial court. Neither party mentions this section, nor would it be applicable, since it also was in existence prior to subsection (d) being added to Rule 307. The 30 days allowed to file an appeal make subsection (b) just as inapplicable and unworkable as subsection (a) for the purposes of expeditious appellate review of TROs.

The plaintiff in the case at bar argues that the defendants, pursuant to Rule 307(d), had to file a notice of interlocutory appeal and a petition in the appellate court within two days of the entry or denial of the TRO, and not the entry of an order denying the motion to dissolve the TRO. This argument does not make sense if applied to an adverse party that had no notice of plaintiff's petition for a TRO. How can one appeal from a TRO of which one is unaware? All a plaintiff would have to do in some cases is to wait two days before service of the TRO on the defendant and, thus, avoid an appeal.

■ Even if a defendant is made aware of the TRO after its issuance, our reasoning above applies to the filing of a motion to dissolve whenever a party had notice but failed to appear. Section 11—101 gives the defendant a right to file a motion to dissolve when a TRO is issued without notice. If we force the defendant to appeal within two days of the issuance of the TRO, defendants may lose their right to have the trial court reconsider its ruling, because of the time constraints. Moreover, we wish to give the trial court the opportunity to correct, modify, or void the TRO in order to avoid unnecessary appeals and the difficulties placed on this court by Rule 307(d) of hearing and deciding an appeal within two days. Finally, in many cases, the parties may agree upon the terms of a TRO pending the hearing for the preliminary injunction, thus avoiding an appeal or a miscarriage of justice. Thus, an adverse party to the issuance of an *ex*

*parte* TRO should file a motion to dissolve in the trial court as soon as possible and seek a hearing on the motion within two days or sooner from the time of service of the TRO. The losing party, including an adverse party that is unable to obtain a ruling, should file its appeal within two days of the adverse party being served with the TRO.

Plaintiff cites *Williams v. Nagel* (1993), 251 Ill. App. 3d 176, 620 N.E.2d 1376, for the proposition that the defendants have no right to appeal from the December 7, 1993, order refusing to dissolve the TRO; rather, plaintiff argues, the defendants had to appeal within two days from the November 29, 1993, issuance of the TRO. Assuming that the defendants had notice of the hearing on November 29, 1993, plaintiff is correct that the defendants had to appeal within two days. However, *Williams* held that the *plaintiffs*, not the defendants, lost their right to appeal by failing to file a petition and notice of appeal within two days of the denial of the TRO. Further, the *Williams* court stated that "an appeal must be filed within two days of the entry of the *order* sought to be reviewed or the right to challenge the *ruling* will be lost." (Emphasis added.) (*Williams*, 251 Ill. App. 3d at 179, 620 N.E.2d at 1378.) The *Williams* court did not limit the right to appeal to only appealing from orders granting the TROs. *Williams*, 251 Ill. App. 3d 176, 620 N.E.2d 1376.

■ Finally, we need to mention that the defendants filed a document entitled "Appellant's Brief," which consisted of 47 pages of facts and argument, and which was filed in this court on January 14, 1994, over 30 days after the entry of the order denying the motion to dissolve the TRO. The rule is clear that a party appealing from a TRO or a denial of a motion to dissolve a TRO is required to file a petition, no longer than 15 pages, stating the relief requested and the grounds for relief, "*within two days of the entry or denial of the temporary restraining order from which review is being sought.*" (134 Ill. 2d R. 307(d)(1).) The fact that the defendants did not attempt to comply with any of Rule 307(d)'s mandatory requirements as to the time to file the petition deprived this court of jurisdiction to consider the issues raised by the defendants in regard to the TRO.

Parenthetically, we note that plaintiff argues that the defendants' filing of a document entitled "Appellant's Brief," which is 47 pages long, precludes them from appealing the TRO, since the document should be entitled "Petition" and/or "Legal Memoranda," under the provisions of Rule 307(d). (134 Ill. 2d R. 307(d).) While we agree with plaintiff that the railroad failed to comply with the page-limitation and naming provisions of Rule 307(d), those provisions are not jurisdictional. (See Ill. Ann. Stat., ch. 110A, par. 341, Historical &

Practice Notes, at 477-78 (Smith-Hurd 1985) (wherein the page-limitation and other technical requirements for briefs in appeals from final decisions are discussed).) These requirements are not jurisdictional, but failure to comply may subject the offending party to sanctions within the discretion of the reviewing court. Since "Appellant's Brief" was not timely filed under Rule 307(d), the question of an appropriate sanction in this case is moot.

## II. PRELIMINARY INJUNCTION

### A. FACTS

On December 7, 1993, the trial court heard evidence in support of plaintiff's request for a preliminary injunction. Plaintiff first called Cornell Phillips, who was a railroad employee from 1984 to 1987. Mr. Phillips described the atmosphere for employees of the railroad as "frightening." He felt that he could not talk to anyone about the accidents of other employees, and he stated that railroad employees were told that they would lose their jobs if they testified as a witness in any other employee's FELA case.

Plaintiff next called Gary Barker, the assistant general chairman for the railroad employees' union. In his job, he dealt with both railroad employees and management. He felt that the railroad had an "on-going attitude to suppress" information from employees regarding accidents and injuries that occurred at work. There was no doubt in Mr. Barker's mind that railroad employees throughout the several States of his representation were intimidated from providing information to FELA claimants or their attorneys concerning job-related injuries.

Mr. Barker felt that the reason the employees are so afraid to talk about other employees' on-the-job injuries is that they fear they will lose their good jobs. Furthermore, the defendants' rules provide that an employee can be disciplined, even fired, for giving information about job-related accidents to someone outside the railroad, even though employees are required to give statements concerning accidents to the railroad.

Barker identified a copy of a letter from one of the defendants' law firms to plaintiff's law firm. The letter stated, in pertinent part:

> "Please be advised that neither you nor anyone else from your firm or at your direction should come onto the property of Union Pacific Railroad Company, examine or inspect any equipment of Union Pacific Railroad company without our express written consent. In addition, under no circumstances should you or anyone on your behalf communicate directly with any railroad foreman, supervisors, or office personnel about any aspects of the claim of

Mr. Harper. Finally, please advise if you wish to interview *any railroad employees* concerning Mr. Harper's claim. Please do not conduct such interviews without our knowledge and consent.

We believe that attorney ethical rules and laws of most states prohibit contact by you or anyone on your behalf from communicating about your client's claim with any person having managerial responsibility for the railroad, with any person whose statement may constitute an admission of the railroad and any person whose act or omission may be imputed to the railroad for purpose of civil liability. We expect you and others acting on your behalf to honor these principles." (Emphasis added.)

Barker testified that he received several other copies of the same form letter addressed to attorneys representing other FELA claimants, since he is the union representative for these employees.

On cross-examination, Barker admitted that he did not remember having personally met the plaintiff in this case, but he stated that he believed he was plaintiff's union representative, given plaintiff's location. Mr. Barker did not have any personal knowledge of any particular witnesses who had been intimidated by the defendants from coming forward to testify on behalf of plaintiff.

Plaintiff next called Norman Stander, a senior claims representative for the defendants, as an adverse witness. Mr. Stander's job requires him to investigate FELA claims. In doing so, he routinely talks to witnesses outside the presence of the claimants or the claimants' attorneys. Mr. Stander identified a form letter that was used by the defendants throughout the country, which was the same form letter sent to plaintiff's attorney and to Mr. Barker, the union representative. Mr. Stander did not know the reason the defendants required plaintiffs' attorneys to obtain their consent before interviewing witnesses.

Finally, Roger Denton, an attorney from the law firm representing plaintiff, testified that his practice is limited primarily to representing plaintiffs in FELA litigation. In his eight years of practice, he has always interviewed all "rank-and-file" railroad employees without the prior knowledge or consent of the railroad, and that is the practice of all other attorneys who represent FELA claimants, as far as he knows. He has not found it useful to try to talk to managerial railroad employees, because he has learned that they normally will not talk to him, but he feels that section 60 gives him the right to interview any and all railroad employees if he so desires. He and his law firm stopped interviewing witnesses on FELA cases after they started receiving the form letters from the railroad requiring prior knowledge and consent before these interviews, since

they took the threat of having to defend disciplinary actions very seriously.

Mr. Denton additionally testified that plaintiff's injury is a repetitive-trauma injury, resulting in carpal tunnel syndrome, and that there are no occurrence witnesses to any singular event causing plaintiff's malady, but only witnesses who worked alongside plaintiff and observed him working on equipment that required the same physical maneuvers repetitively over the years.

Defendants did not put on any evidence.

## B. LAW

When the appellate court reviews the issuance of a preliminary injunction, the sole issue is whether the trial court abused its discretion. (*Board of Trustees of Community College District No. 508 v. Bakalis* (1980), 80 Ill. App. 3d 502, 400 N.E.2d 47.) If the trial court had a legal basis for granting the injunction, no abuse of the trial court's discretion will be found. (*City of Chicago v. Airline Canteen Service, Inc.* (1978), 64 Ill. App. 3d 417, 380 N.E.2d 1106.) Whether to issue a preliminary injunction is within the sound discretion of the trial court upon a *prima facie* showing of necessity. *Stasica v. Hannon* (1979), 70 Ill. App. 3d 785, 388 N.E.2d 1110.

■ A *prima facie* case of necessity is established when the party seeking the preliminary injunction presents evidence that (1) it has a clearly ascertained right which is in need of protection; (2) it will suffer irreparable injury without that protection; (3) it has no adequate remedy at law; and (4) it is likely to be successful on the merits. (*Rotary Club v. Harry F. Shea & Co.* (1983), 120 Ill. App. 3d 988, 458 N.E.2d 1002.) The correct purpose of a preliminary injunction is to preserve the status quo or that state of affairs legally existing just prior to the motion for preliminary injunction. (*Rotary Club*, 120 Ill. App. 3d 988, 458 N.E.2d 1002.) In deciding whether to grant preliminary injunctive relief, the trial court should not decide contested issues of fact, nor should it decide the merits of the case. By the same token, the appellate court should consider the substantive issues only to the extent necessary to determine if the trial court abused its discretion. *Rotary Club*, 120 Ill. App. 3d 988, 458 N.E.2d 1002.

The defendants argue that plaintiff did not establish the four factors necessary to the issuance of a preliminary injunction. As to the first factor, the defendants contend that plaintiff did not establish a clearly protectable interest, in that section 60 does not grant plaintiffs' attorneys the right to conduct *ex parte* interviews of managerial employees of the defendants or the right to come onto railroad property.

Section 60 was designed to prevent any direct or indirect chill on the availability of information to any party in interest in a FELA claim. (*Cavanaugh v. Western Maryland Ry. Co.* (4th Cir. 1984), 729 F.2d 289.) "Therefore, the Act [FELA] is to be read liberally." (*Cavanaugh*, 729 F.2d at 293.) The courts have consistently held that a FELA claimant's attorney is a "person in interest" within the meaning of section 60. (*Sheet Metal Workers International Association v. Burlington Northern R.R. Co.* (8th Cir. 1984), 736 F.2d 1250.) When it enacted section 60, Congress recognized the likelihood that railroad agents would coerce or intimidate employees to prevent them from testifying against the railroad. *Hendley v. Central of Georgia R.R. Co.* (5th Cir. 1980), 609 F.2d 1146.

■ We cannot conceive, nor is it seriously suggested by the defendants, that there is any purpose for sending the form letters to all FELA claimants' attorneys other than to restrict claimants' attorneys from obtaining information from railroad employees about the facts incident to the injury or death of an employee. The defendants maintain that they have the right to restrict plaintiffs' attorneys from interviewing certain employees and the right to restrict the time and place of such interviews, but they do not dispute that they intended to restrict plaintiffs' attorneys' access to information. The trial court, therefore, did not abuse its discretion in finding that the defendants' policy of mailing form letters to all FELA claimants' attorneys was an attempt to restrict the attorneys' unfettered access to information regarding FELA claims, and that this policy effectively restricted employee information as to the facts incident to employees' injuries. *Stack v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (1980), 94 Wash. 2d 155, 615 P.2d 457.

In fact, the railroad does not deny that the portion of the letter requiring prior knowledge and consent of the railroad before an attorney interviews "any railroad employees" is a clear violation of section 60. The railroad merely cites Illinois Rules of Professional Conduct, Rule 4.2 (134 Ill. 2d R. 4.2), which regulates communication with persons represented by counsel, in support of their contention that plaintiffs' attorneys do not have the right to conduct *ex parte* interviews with managerial employees. However, the defendants admit that the provisions of section 60 preempt State law to the extent of any conflict in the two rules.

Further, section 60 in no way attempts to distinguish between managerial employees and other railroad employees. If Congress intended such, it could and should have set forth the distinction between classes of employees in section 60 or provided for the various States to make exceptions for certain classes of employees. Manage-

rial employees could be witnesses to an accident or they may be aware of certain practices or equipment of the railroad that may be dangerous to its employees. If any employee of the railroad, whether he be management, clerical, or a common laborer, wishes to talk to claimants' counsel, section 60, by its very breadth, prohibits any act by the defendants to effectuate a coverup or to make discovery of the causes of the accident more difficult.

Given the purposefully broad language of section 60 and the courts' uniformly liberal construction of that language, we find that the trial court was within its sound discretion in finding that any State statute or rule, including the Rules of Professional Conduct (134 Ill. 2d R. 1.1 *et seq.*), that prohibits plaintiffs' attorneys from conducting *ex parte* interviews with the defendants' employees regarding facts incident to FELA claimants' injuries is preempted by Federal law. (See *Mondou v. New York, New Haven, & Hartford R.R. Co.* (1912), 223 U.S. 1, 56 L. Ed. 327, 32 S. Ct. 169.) The defendants cite *Lake v. Orgulf Transport Co.* (W.D. Tenn. 1993), 1993 W.L. 194096, where, in a case with similar facts and a similar letter, the district court indicated that plaintiff's counsel may not have the right to interview corporate employees whose position gives them the legal authority to bind the corporate defendants. This indication by the district court was *dicta*, and there was no discussion as to why certain employees should be treated differently under section 60. We choose not to read something into section 60 that is contrary to the purpose and clear language of section 60. Therefore, the trial court was clearly within its sound discretion in finding that the defendants' "use of letters instructing plaintiff's counsel not to conduct interviews of its employees without its knowledge or consent" was void under section 60.

■ The defendants next argue that plaintiff did not establish that he would suffer irreparable harm without the preliminary injunction. The defendants assert that plaintiff's evidence did not establish that any particular employees had been intimidated from giving information to plaintiff's attorney. We do not agree. Plaintiff's attorney testified that his law firm had stopped its usual and customary practice of interviewing all rank-and-file employees regarding FELA claims against the railroad as a result of the letters received from the railroad and especially due to the threat of ethical charges against the law firm.

We do not accept the defendants' argument that there is no irreparable harm to plaintiff because his attorney has not yet been brought up on disciplinary charges. Even if plaintiff's law firm were ultimately vindicated, that does not cure the harm in this case. The

threat of ethical charges has been sufficient to chill the attorney's customary practice of interviewing any railroad employee who is willing to talk to the attorney and who has information concerning an FELA claim. Furthermore, the evidence was clear that, generally, railroad employees are afraid to talk to plaintiffs' attorneys in FELA actions, for fear of losing their jobs. The defendants' message to plaintiff's attorney and the union representative can only serve to further inhibit any potential witness from voluntarily providing information to persons who have an interest in the FELA claim, in violation of section 60. There was, therefore, sufficient evidence of irreparable harm.

■ The railroad next argues that plaintiff did not demonstrate that his remedy at law was inadequate. However, the only remedy the railroad posits is a protective order regulating discovery under Supreme Court Rule 201(c)(1). (134 Ill. 2d R. 201(c)(1).) We do not see why a claimant must seek the protection of a protective order under our discovery rules, when there is a Federal criminal statute available and directly on point. Nor should our discovery rules abrogate a plaintiff's remedy of injunctive relief that has been established by the courts under section 60. See *Hendley v. Central of Georgia R.R. Co.* (5th Cir. 1980), 609 F.2d 1146.

The harm from the defendants' actions is more likely to arise in the phases of the lawsuit prior to discovery than afterwards. It is elementary that an attorney cannot schedule depositions or frame intelligent interrogatories without having some basic information about the facts of the case, which the attorney often cannot obtain satisfactorily from the claimant alone. Section 60 is a broad protection for FELA attorneys and claimants in their indispensable search for the information necessary to FELA actions. Not only is injunctive relief authorized under section 60 in a case such as this, it is often necessary to accomplish the purpose of the FELA, which is to protect claimants' access to information concerning FELA claims. (*Hendley*, 609 F.2d 1146; S. Rep. No. 661, 76th Cong., 1st Sess. 2, 5 (1939).) Thus, the trial court did not abuse its discretion in finding that plaintiff did not have an adequate remedy at law.

■ The defendants additionally argue that plaintiff failed to establish a likelihood of success on the merits. The railroad claims that the evidence did not establish a *prima facie* case that its actions had the effect of inhibiting any particular witnesses from coming forward on this plaintiff's claim. We disagree. Plaintiff did more than establish a *prima facie* case as to himself. He established, by the requisite standard of a preponderance of the evidence (*Rotary Club*, 120 Ill. App. 3d 988, 458 N.E.2d 1002), that the general atmosphere of the

railroad intimidates employees from voluntarily furnishing evidence to FELA claimants and their attorneys.

The form letter, sent by the defendants to all FELA claimants' attorneys, could do nothing other than further inhibit employees, including those that would be potential witnesses in plaintiff's case. By the defendants' logic, plaintiff would be required to find the witnesses that were already inhibited from testifying in his case in order to show a likelihood of success on the merits. If plaintiff had the ability to find and talk to these witnesses, as the defendants argue he should have, then, indeed, he would not have had to resort to the court for an injunction. The trial court did not abuse its discretion in finding that there was a likelihood of success on the merits based upon the evidence presented.

## III. SCOPE OF THE PRELIMINARY INJUNCTION

■ The defendants claim that the scope of the preliminary injunction is overly broad. To the extent that the preliminary injunction applies across the board to plaintiff's attorneys and allows them free access to conduct unrestricted, *ex parte* interviews of any and all railroad employees, we agree. The statements in the preliminary injunction that we find objectionable are as follows:

"2. Schlicter, Bogard & Denton and their agents may conduct ex parte interviews of Defendant's employees regarding facts incident to FELA claimants' injuries.
\*\*\*
4. Defendants and their representatives are hereby enjoined and restrained from \*\*\* in any way interfering with ex parte communication by Plaintiff's attorneys with their employees regarding such claims \*\*\*."

The problem with the preliminary injunction is that the defendants could be held in contempt for restricting plaintiff's attorneys from seeking to interview railroad employees during their working hours. Even plaintiff's attorney testified that he did not normally seek to interview employees during their working hours. The defendants have a right to conduct their business in a safe manner without worrying about plaintiff's attorneys disrupting that work. Therefore, to the extent that the preliminary injunction gives plaintiff's attorneys rights to conduct *ex parte* interviews of any railroad employee at any time or any place, we reverse and remand with directions to the trial court to limit the scope of the preliminary injunction so that it prohibits the defendants from interfering with any *ex parte* communications by plaintiff's attorneys with defendants'

254

employees, except when on defendants' property or during the working hours of said employees.

Affirmed in part; reversed in part and remanded with directions.

GOLDENHERSH and MAAG, JJ., concur.