**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (3d) 180668-U

Order filed October 29, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| GAS DEPOT OIL COMPANY, an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0668 Circuit No. 17-CH-1676 |
| GAMBOA ENTERPRISES, INC.; ROBERT GAMBOA; and LUKE OIL COMPANY., INC., | ) ) ) ) | Honorable John C. Anderson, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Presiding Justice Schmidt and Justice McDade concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) Trial court did not err in denying plaintiff's request for a preliminary injunction where plaintiff failed to raise a fair question as to the likelihood of success on the merits.

¶ 2    In an interlocutory appeal, plaintiff, Gas Depot Oil Company (Gas Depot), challenges the denial of its request for a preliminary injunction against defendants, Gamboa Enterprises, Robert Gamboa, and Luke Oil Company, to enforce an agreement to supply fuel.  We affirm.

¶ 3                                    FACTS

¶ 4          Gas Depot is a fuel supply company that sells and distributes gasoline products to gas stations in northern Illinois. Gamboa Enterprises and Robert Gamboa (Gamboa defendants) operate a gas station on South Wolf Road in Mokena. On July 1, 2016, Gas Depot and Gamboa defendants entered into an agreement, entitled "Motor Fuel Sale Petroleum Supply Agreement." Under the terms of the fuel supply agreement, Gamboa defendants agreed to "purchase all Petroleum Products to be sold from the Premises in connection with the Retail Petroleum Business exclusively from Gas Depot Oil Company" for a period of seven years. Gamboa defendants also agreed to brand the Mokena location as a CITGO station and sell CITGO branded petroleum products. As an incentive, Gas Depot provided Gamboa defendants with a $25,000 signing bonus. In addition, a handwritten provision at the bottom of the last page of the agreement stated, "Gas Depot will finance 4 new dispensers with 0% interest rate. Gas Depot will upgrade POS. Gas Depot will provide dealer with $75,000 interest free loan."

¶ 5          In the fall of 2016, Luke Oil, another fuel supply company, approached Gamboa about leaving Gas Depot. Gas Depot heard about the solicitation and informed Luke Oil that the CITGO station was under contract with Gas Depot until July 2023. Gas Depot also told Luke Oil that legal action would be pursued if Gamboa Enterprises decided to end its relationship with Gas Depot. Luke Oil and Gamboa continued to discuss a new supplier agreement. In July 2017, Gamboa Enterprises notified Gas Depot that it intended to cease purchasing petroleum products from Gas Depot and begin purchasing fuel from Luke Oil on September 30, 2017, and that it intended to "debrand" the location on that same date.

¶ 6          On September 11, 2017, Gas Depot filed a complaint against Gamboa Enterprises, Gamboa and Luke Oil, seeking injunctive and declaratory relief. In its complaint, Gas Depot claimed that

2

by advising Gas Depot that it would no longer purchase fuel from the company but would instead purchase fuel from Luke Oil, Gamboa Enterprises had breached the agreement. The complaint alleged that if Gamboa Enterprises was allowed to "de-brand" the gas station from the CITGO brand, it would cause irreparable harm to Gas Depot in that it "will lose the business at the [Mokena] location, will suffer damage to its goodwill associated with selling fuel to the location, [and] will suffer CITGO brand recognition." Gas Depot further alleged that it had no adequate remedy at law and was likely to succeed on the merits of its claims. Finally, it claimed that the harm to it outweighed any harm that Gamboa Enterprises would suffer if it was required to purchase fuel under the terms of the Gas Depot agreement.

¶ 7       In conjunction with the complaint, Gas Depot filed a motion for a temporary restraining order and/or a preliminary injunction enjoining defendants Gamboa from "debranding" the CITGO station and requiring them to purchase fuel exclusively from Gas Depot. Attached to the motion was an affidavit, signed by Gas Depot's president, George Nediyakalayil. Nediyakalayil averred that CITGO was one of Gas Depot's largest branded suppliers of fuel and that, if Gamboa Enterprises was allowed to debrand the Mokena location, the good will that Gas Depot spent years establishing with CITGO would be irreparably harmed. The trial court granted a temporary restraining order, pending a hearing on preliminary injunctive relief.

¶ 8       At the preliminary injunction hearing, the evidence revealed that under the terms of the Gas Depot agreement, Gamboa Enterprises agreed to purchase all petroleum products sold at the Mokena location exclusively from Gas Depot for a seven-year term. The contract also granted Gas Depot the right of first refusal on any proposed sale or transfer of any interest in the location. As an incentive to sign the agreement, Gas Depot paid Gamboa Enterprises $25,000 as an

3

"improvement credit." Gas Depot claimed that Gamboa defendant would be in breach of the agreement if they attempted to cancel Gas Depot's supply services.

¶ 9 Gamboa defendants admitted that they signed the agreement and that, under the terms of the contract, they agreed to purchase fuel from Gas Depot for seven years. They also asserted that the handwritten provision in the contract made part of the original agreement and that, pursuant to those terms, Gas Depot agreed to finance four new pumps, upgrade the point of sale credit card processing system, and provide Gamboa Enterprises with a $75,000 interest-free loan. Gamboa defendants asserted that Gas Depot failed to fulfill those provisions and therefore had breached the contract.

¶ 10 Gas Depot presented Gamboa as an adverse witness. He acknowledged that he signed the agreement on behalf of Gamboa Enterprises and that Gas Depot paid Gamboa Enterprises a $25,000 signing bonus. He testified that the handwritten provisions on the last page of the agreement were important terms of the contract. He needed to upgrade the pumps at the Mokena location to avoid an Environmental Protection Agency (EPA) violation with the State of Illinois and financing was a crucial part of that process. He stated that he signed the agreement with the understanding that Gas Depot would provide four new dispensers, upgrade the credit card processing system, and provide a $75,000 interest-free loan. Gas Depot upgraded the credit card processing system shortly after signing the contract, but refused to provide interest-free financing for the new dispensers and the loan. He testified that it cost him $113,000 to install four new pumps and he needed an additional $75,000 to build onto the station. On cross-examination, he admitted that Gas Depot offered an $85,000 interest-free loan, but stated that he refused the loan because "that was not what we agreed to." He also admitted that Gas Depot requested financial information to help him obtain financing from banking institutions. He stated that he refused to

4

pursue financing options through another party because the agreement he signed with Gas Depot said that Gas Depot would provide the funds interest free.

¶ 11 During his testimony, Gamboa identified several email correspondences admitted by Gas Depot. In one email to Gamboa, dated November 10, 2016, Nick Tanglis, Gas Depot's chief financial officer, told Gamboa that "the $85,000 interest-free loan represents the maximum amount that Gas Depot will invest in your location for pumps and upgrades." Gamboa testified that he was discouraged with Tanglis because he ignored Gamboa's requests for new pumps and a $75,000 interest-free loan; Tanglis refused to honor the agreement. As a result, Gamboa began looking for other supply companies that were willing to supply fuel and install new pumps. Gamboa needed to install new pumps quickly to avoid an EPA violation. After the temporary restraining order was imposed, he sought financing on his own and replaced the pumps.

¶ 12 After Gamboa testified, defendants moved for a directed finding. The trial court found that the evidence did not show a likelihood of success on the merits. The court ruled that Gas Depot failed to establish the elements necessary for a preliminary injunction and granted a directed finding in defendants' favor. The court denied Gas Depot's motion for preliminary injunction and lifted the temporary restraining order.

¶ 13                                                    ANALYSIS

¶ 14 Gas Depot argues that the trial court erred in denying its request for a preliminary injunction where it raised a fair question as to the requisite elements.

¶ 15 The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits of the case. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 156 (1992). A preliminary injunction is an "extraordinary" remedy that "should be granted only in situations of extreme emergency or where serious harm would result if the preliminary injunction was not issued."

5

*Clinton Landfill, Inc. v. Mahomet Valley Water Authority*, 406 Ill. App. 3d 374, 378 (2010). To obtain a preliminary injunction, the moving party is required to show "(1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case." *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006). At the preliminary injunction stage, the trial court should not consider contested issues of fact or decide the merits of the case. *Harper v. Missouri Pacific R.R. Co.*, 264 Ill. App. 3d 238, 249 (1994). To succeed, the party seeking the preliminary injunction must raise a "fair question" as to the existence of each element required to obtain the injunction. *Clinton Landfill*, 406 Ill. App. 3d at 378. The failure to raise a fair question as to any one of the four elements is sufficient reason to deny preliminary injunctive relief. See *Stenstrom Petroleum Services Group, Inc. v. Mesch*, 375 Ill. App. 3d 1077, 1095.

¶ 16 The trial court has discretion to grant or deny a request for a preliminary injunction and we limit our review to determining whether the court abused that discretion. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 365 (2001). An abuse of discretion occurs only when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the court's view. *World Painting Company, LLC v. Costigan*, 2012 IL App (4th) 110869, ¶ 12. Here, the trial court did not abuse its discretion in denying Gas Depot's preliminary injunctive relief because Gas Depot failed to establish a fair question as to the likelihood of prevailing on its breach of contract claim.

¶ 17 To prevail on a claim of breach of contract, a plaintiff must show that (1) a contract exists, (2) the plaintiff performed its obligations under the contract, (3) the defendant breached the contract, and (4) the plaintiff was injured as a result. *Talbert v. Home Savings of America, F.A.*, 265 Ill. App. 3d 376, 379 (1994). At the preliminary injunction stage, Gamboa admitted that he

6

signed the contract on behalf of Gamboa Enterprises and Gas Depot demonstrated a fair question that a contract existed. Gas Depot established that the parties had an agreement and that the agreement provided for the delivery of petroleum products for a seven-year period.

¶ 18 However, Gas Depot failed to establish a fair question as to success on the merits of a breach of contract claim. The only witness Gas Depot offered at the hearing was Gamboa. Both the written contract and Gamboa's testimony established that Gas Depot agreed to install four dispensers at a 0% interest rate and provide a $75,000 interest-free loan. Gas Depot did not contest Gamboa's claim that the handwritten provisions were part of the contract, nor did it provide any evidence to contradict Gamboa's interpretation of those provisions. Gamboa further testified that after the parties signed the agreement, Gas Depot refused to provide an interest-free loan to fill its obligation under the contract. Gamboa offered documentation to support his testimony that the cost of installing the pumps alone was $113,000 and that the total investment to which Gas Depot agreed was $200,000. He also identified an email from Gas Depot, which he received four months after he signed the contract, stating that the total maximum financial support Gas Depot would provide was $85,000. Without any other witnesses or evidence to establish a fair question that Gas Depot performed its obligations under the contract, we cannot say that the trial court abused its discretion in denying plaintiff's motion for a preliminary injunction.

¶ 19                                    CONCLUSION

¶ 20 The judgment of the circuit court of Will County is affirmed.

¶ 21 Affirmed.

7